**OLGA'S KITCHEN OF HAYWARD, INC., Plaintiff and Counter-Defendant,**

v.

**Dr. Michael PAPO, Individually and d/b/a PSS Associates, Defendant, Counter-Plaintiff, and Third-Party Plaintiff,**

v.

**Robert B. SOLOMON, Third-Party Defendant.**

**Civ. No. 83–CV–3878–DT.**

United States District Court, E.D. Michigan, S.D.

Dec. 18, 1985.

---

Gordon S. Gold, Evans & Luptak, Detroit, Mich., for plaintiff and counter-defendant and third-party defendant.

Joseph S. Radom, Michael A. Jacobs, Butzel, Long, Gust, Klein & Van Zile, Detroit, Mich., for defendant, counter-plaintiff, and third-party plaintiff.

## MEMORANDUM OPINION AND ORDER IMPOSING SANCTION AND AWARDING COSTS

COHN, District Judge.

### I.

#### A.

Plaintiff, Olga's Kitchen of Hayward, Inc. (Olga's), is the lessee and defendant, Dr. Michael Papo (Papo), is the lessor under an Equipment Lease Agreement (equipment lease) for restaurant premises in a shopping mall in Hayward, California. On June 14, 1985 I entered a judgment resolving a dispute between the parties as to the amount required to be paid by Olga's upon exercising an option to purchase the leasehold improvements and equipment described in the equipment lease and the amount of delinquent rent. On August 15, 1985 I entered an order transferring title to the equipment and leasehold improvements to Olga's. My reasons for the judgment and order are explained in my bench opinion of May 23, 1985, as memorialized in the Opinion of June 7, 1985 revising the bench opinion. Now before me for decision is plaintiff's application for costs and attorney's fees under Federal Rules of Civil Procedure 11, 16(f), 26, and 54, and 28 U.S.C. §§ 1920 and 1927, for Papo's counsel's signing pleadings, motions and other papers in violation of the standards imposed by Rule 11, for failure to comply with a pretrial order, for changing the substance of expert testimony at trial without notice, and for violating discovery rules.[1]

#### B.

Olga's claims $27,968.75 in legal fees, representing 212.25 hours of attorney work at $130.00 an hour broken down into 185.5 hours before and during trial and 26.75 hours after trial (another 10.75 hours is attributable to paralegals at $35.00 an hour) including work on the application and responses. Olga's also requests $6,012.66 in costs and expenses incurred before and during trial and $385.90 in costs and expenses incurred after trial. Since Olga's is clearly the prevailing party in the case, it would have been preferable had Olga's taxed its costs separately under Rule 54 and 28 U.S.C. § 1920.

Papo opposes the application on a variety of grounds, mainly because he asserts he litigated this case in good faith, did not lose on all the issues, and in any event, because the hours claimed are excessive. Additionally, Papo argues against part of the costs and expenses claimed on the grounds that Olga's is either not entitled to them or they are not reasonable in amount.

#### C.

A multitude of pleadings has been filed in support of and in opposition to the application. Unfortunately, Papo did not see fit to follow plaintiff's format, making it difficult to deal with his objections. On the other hand, Olga's did not display its re-

---

1. Although Olga's petitions for a sanction under 28 U.S.C. § 1927, I am grounding the sanction on the other rules. Section 1927 provides: "Any attorney ... who so multiplies the proceedings in any case as to increase costs unreasonably and vexatiously may be required by the court to satisfy personally such excess costs." Inasmuch as the 1983 amendments to the Federal Rules of Civil Procedure were intended in part to reduce the reluctance of courts to impose sanctions under older rules, *see infra,* and are now adequate for doing so, I am able to avoid a determination as to whether the actions of Papo and his counsel "multiplie[d] the proceedings" or were conducted "vexatiously."

quest, particularly for post-trial amounts, in a tabular format, also making my task more difficult than necessary.

From my examination of the computer generated sheets filed in support of the application, it appears that the hours claimed are also the total hours devoted to the case by Olga's attorneys, so that, effectively, Olga's is requesting payment of its attorney's fees and expenses.

### D.

For the reasons that follow, I award Olga's $15,911.25 in attorney's fees and $5,766.21 for costs and expenses. The attorney's fees are awarded as a sanction against Papo for the manner in which this case was conducted. Since as will be explained I cannot determine who was at fault, Papo or his attorneys, the award is made jointly against them, *Mohammed v. Union Carbide Corp.*, 606 F.Supp. 252 (E.D.Mich.1985), and since Papo's current attorneys have assumed full responsibility in the matter the sanction is against them. Papo and his counsel are also directed to pay the Clerk of the Court $1000.00 because of the efforts required by me in response to their actions in this case.

### II.

### A.

As explained in the Opinion, plaintiff's complaint asked for a declaratory judgment as to the fair market value of the leasehold improvements and equipment it leased from Papo for its restaurant in Hayward, California. Once determined, Olga's asked for specific performance of its option to purchase the leasehold improvements and equipment. Papo had refused plaintiff's right to exercise the option, claiming Olga's was in default in the rent. Papo, in his answer and counterclaim, asked for a return of the leasehold improvements and equipment, interest on delinquent rent, rent for wrongful holding over, and punitive damages.

### B.

### 1.

Olga's initially valued the leasehold improvements and equipment at $34,147.00. I ultimately determined the value of the equipment to be $13,835.00, using original cost less straightline depreciation, and I found the improvements had no residual value since they could not be removed. Papo advanced various values during the case beginning with $350,000.00 before trial, then $316,563.00 at trial, and then $209,364.00 in proposed findings after trial. Papo did not obtain an appraisal until more than a year after the case was filed, and then he utilized a value-in-use method of valuation. I characterized this approach to value as fatuous because, under the circumstances of the equipment lease any amount Papo received would really be a windfall. Importantly, I found Papo's approach to valuing the leasehold improvements simply not credible.

### 2.

I found Olga's was indebted to Papo for interest on delinquent rent in the amount of $11,876.44.

### 3.

I found Papo's attempt to characterize Olga's as a holdover tenant in default as an afterthought, specifically stating:

[I]t is unlikely the lease was intended as a true lease, but was rather the mechanism by which defendant financed plaintiff's entry into the restaurant business in Hayward by providing the funds for the improvements to the leased premises and paying for the necessary restaurant equipment.

Clearly, the leasehold improvements could not be removed at the end of the five year term [of the equipment lease] since they were an integral part of the real estate. As to any equipment which might be removable at the end of five years, it would be no more than second-hand or used restaurant equipment which could be sold through a dealer or by advertising in the classified section of a newspaper. Nothing in the record sug-

gests that defendant either desired or had any expectation the option to purchase would not be exercised or that he placed any residual value on the equipment in considering the terms of the lease and his investment.

Importantly, I also found that plaintiff's mall lease had not been assigned as security for the equipment lease with Papo and therefore Papo could not expect to have succeeded to plaintiff's location in the mall if it defaulted on the equipment lease.

### 4.

Also important to my decision on plaintiff's application are my findings as to the manner in which Papo and his attorneys conducted this case. I said that "[t]he pretrial proceedings were marked by a singular unawareness by defendant of the responsibilities imposed by the Federal Rules of Civil Procedure in discovery matters" and that while "the parties were not wholly consistent from the inception of the case in their respective proposed findings of fact as to the fair market value of the leasehold improvements and equipment and interest on delinquent rent ... [,] [d]efendant, however, carried the day on this score by being egregiously more inconsistent than plaintiff."

### III.

### A.

■ Federal Rule of Civil Procedure 11 reads in part:

Every pleading, motion and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name.... The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is *well grounded in fact* and is *warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law,* and that it is *not interposed for any improper purpose,* such as to ha-

rass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, *shall* impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

(Emphasis added.) A signature to a pleading in violation of any one of the requirements embodied in the text of the rule is grounds for sanction. *See Helms v. CBS, Inc.,* 770 F.2d 1168 (D.C.Cir.1985).

■ The rule was amended in 1983 to provide an expansive standard for the imposition of appropriate sanctions, including but not limited to the other party's attorney's fees. *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243 (2d Cir.1985). Prior to the 1983 amendments, the standard for imposing sanctions under the rule was whether the action was commenced in "good faith." *Goldman v. Belden,* 580 F.Supp. 1373 (W.D.N.Y.1984), *vacated on other grounds,* 754 F.2d 1059 (2d Cir.1985). Rule 11 no longer allows inquiry only into the subjective good faith intent of a party. *Mohammed v. Union Carbide Corp., supra; Zaldivar v. City of Los Angeles,* 590 F.Supp. 852, 856 (C.D.Cal.1984). Now, the court must examine the objective reasonableness of a claim in light of existing law and facts.

■ The court must also determine whether counsel made a "reasonable inquiry" into the legitimacy of the claim prior to filing the pleading based on the particular facts and circumstances of the claim. *Mohammed v. Union Carbide Corp., supra,* at 261. A leading commentator has characterized this as a "stop and think" rule. Address by A. Miller, Sixth Circuit Judicial Workshop (Oct. 16, 1985). The party whose conduct is under scrutiny has the burden of demonstrating that he dis-

charged his duty of reasonable inquiry. *See id.*

The purposes and limitations of the rule are most clearly explained by the Advisory Committee Notes to the 1983 amendments, reprinted at 97 F.R.D. 198–201 (1983):

Since its original promulgation, Rule 11 has provided for the striking of pleadings and the imposition of disciplinary sanctions to check abuses in the signing of pleadings....

... The new language is intended to reduce the reluctance of courts to impose sanctions, ... by emphasizing the responsibilities of the attorney and reinforcing those obligations by the imposition of sanctions.

The amended rule attempts to deal with the problem by building upon and expanding the equitable doctrine permitting the court to award expenses, including attorney's fees, to a litigant whose opponent acts in bad faith in instituting or conducting litigation. *See, e.g., Roadway Express, Inc. v. Piper,* 447 U.S. 752 [100 S.Ct. 2455, 65 L.Ed.2d 488], [sic] (1980); *Hall v. Cole,* 412 U.S. 1, 5 [93 S.Ct. 1943, 1946, 36 L.Ed.2d 702] (1973). Greater attention by the district courts to pleading and motion abuses and the imposition of sanctions when appropriate, should discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses.

. . . .

The new language stresses the need for some prefiling inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule. The standard is one of reasonableness under the circumstances....

The rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories. The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted. Thus, what constitutes a reasonable inquiry may depend on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts underlying the pleading, motion, or other paper; whether the pleading, motion, or other paper was based on a plausible view of the law....

. . . .

... The court, however, retains the necessary flexibility to deal appropriately with violations of the rule. It has discretion to tailor sanctions to the particular facts of the case, with which it should be well acquainted.

... [I]n considering the nature and severity of the sanctions to be imposed, the court should take account of the state of the attorney's or party's actual or presumed knowledge when the pleading or other paper was signed....

. . . .

If the duty imposed by the rule is violated, the court should have the discretion to impose sanctions on either the attorney, the party the signing attorney represents, or both....

Even though it is the attorney whose signature violates the rule, it may be appropriate under the circumstances of the case to impose a sanction on the client....

. . . .

... [T]he court must to the extent possible limit the scope of sanction proceedings to the record.

■ The amended rule has achieved at least one of its intended purposes—"to reduce the reluctance of courts to impose sanctions." For examples of the application of the rule, see *Eastway Constr. Corp., supra; Mohammed v. Union Carbide Corp., supra;* and *SFM Corp. v. Sundstrand Corp.,* 102 F.R.D. 555 (N.D. Ill.1984). *See generally* Schwarzer, *Sanctions Under the New Federal Rule—A*

*Closer Look,* 104 F.R.D. 181 (1985); W. Hardy, *Decisions, Opinions and Orders Imposing Sanctions Under the Federal Rules of Civil Procedure in the Sixth Circuit* 34–49 (June 15, 1985) (report prepared at the behest of the American Bar Association Section on Litigation).

### B.

Federal Rule of Civil Procedure 16(f), describing the duties of the parties before trial, reads in part:

> If a party or party's attorney *fails to obey* a scheduling or *pretrial order* ... the judge, upon motion or his own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D). In lieu of or in addition to any other sanction, the judge *shall* require the party or the attorney representing him or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees....

(Emphasis added.) Thus, Rule 16 parallels Rule 11's sanction requirement. The Advisory Committee Notes emphasize that the rule incorporates portions of Rule 37(b)(2) dealing with discovery. The Notes add that "[t]his should facilitate application of Rule 16(f), since courts and lawyers already are familiar with the Rule 37 standards."

### C.

Federal Rule of Civil Procedure 26(e), describing the duties of the parties during discovery, reads in part:

> (1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to ... (B) the identity of each person expected to be called as an expert witness at trial, *the subject matter on which he is expected to testify, and the substance of his testimony.*
>
> (2) A party is under a duty seasonably to amend a prior response if he obtains information upon the basis of which (A) he knows that the response was incorrect when made, or (B) he knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.

(Emphasis added.)

Federal Rule of Civil Procedure 26(g) reads in part:

> Every request for discovery or *response* ... made by a party ... shall be signed by at least one attorney of record in his individual name.... *The signature of the attorney ... constitutes a certification that he has read the request ... and that to the best of his knowledge, information and belief formed after a reasonable inquiry* it is: (1) consistent with these rules and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; (2) not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the costs of litigation; and (3) not unreasonable or unduly burdensome or expensive, given the needs of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation....
>
> If a certification is made in violation of the rule, the court, upon motion or upon its own initiative, *shall* impose upon the person who made the certification, the party on whose behalf the request, response, or objection is made, or both, an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee.

(Emphasis added.)

The Advisory Committee Notes to the 1983 amendments clarify that they parallel the 1983 amendments to Rule 11. 197 F.R.D. at 219. The Notes point out that the standard is the same objective standard that applies to determinations under Rule 11. *Id.*

### D.

Federal Rule of Civil Procedure 37(a) reads in part:

> A party ... may apply for an order compelling discovery as follows:
>
> . . . .
>
> (2) If ... a party fails to answer an interrogatory submitted under Rule 33, ... the discovering party may move for an order compelling an answer....

Federal Rule of Civil Procedure 37(b)(2) reads:

> If a party ... fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule ..., the court in which the action is pending may make such orders in regard to the failure as are just....
>
> . . . .
>
> In lieu of any of the foregoing orders or in addition thereto, the court *shall* require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

(Emphasis added.)

### IV.

### A.

### 1.

Olga's argues that Papo's answer violated Rule 11 by denying, without providing any reason, paragraphs 8–10 of the complaint, which deal with fair market value. Olga's also argues that Papo's paragraph 6 of the counterclaim and the answer to Interrogatory No. 5 violated the rule by valuing the improvements and equipment at $350,000.00. In response, Papo characterizes plaintiff's argument as an attempt to sanction him and his attorney merely for an "unsuccessful defense at trial."

Papo also argues that it was Olga's attorneys who drafted the equipment lease and, thus, were in large part responsible for the dispute over this issue. Papo correctly points out that the equipment lease did not define "fair market value." That plaintiff's attorneys drafted the lease did not give Papo license to interpret its provisions in a fatuous manner. While Papo correctly argues that "fair market value" is capable of many definitions, *see, e.g.,* Michigan Standard Jury Instruction, 2d § 90.6, Papo did not rely on any definition that could be fairly supported by the facts of this case. The tax assessment cases cited by Papo, *C.A.F. Investment Co. v. State Tax Comm'n,* 392 Mich. 442, 450 n. 2, 221 N.W.2d 588 (1974); *Consumers Power Co. v. Big Prairie Twp.,* 81 Mich.App. 120, 130, 265 N.W.2d 182 (1978), do not support his approach to valuation. These cases support the proposition that any number of methods may be used to estimate the value of property for tax assessment purposes; none of these methods is applicable here. As I said in the Opinion, to have required Olga's to pay $350,000.00 for the residual value of the leasehold improvements and equipment would have allowed Papo to reap a windfall because he had no expectation that the option would not be exercised and because he did not place a residual value on the equipment and leasehold improvements at the time he signed the lease.

Although Papo's attorneys may have been both "creative" and "enthusiastic" in his approach to valuation, this is not the type of creativity or enthusiasm countenanced by Rule 11. It is not hindsight that furnishes this conclusion. It was simply unreasonable to pursue this position from the outset of this case. Papo filed a counterclaim stating the value of the leasehold improvements and equipment without an appraisal and in an amount that would have given him grossly more than he bargained for. There was simply no reasonable basis in law or fact for Papo's statement of value.

Also, Papo's attorneys have not satisfactorily demonstrated facts that would consti-

tute a reasonable inquiry so as to avoid sanctions under Rule 11. Attached to Defendant's Supplemental Answer to Plaintiff's Application for Costs and Attorney Fees is an affidavit by Papo's first attorney, detailing the inquiry he made prior to valuing the equipment and leasehold improvements at $350,000.00. In the affidavit he asserts that: (1) he reviewed the equipment lease; (2) he personally reviewed each of its provisions with Papo; and (3) he was advised by Papo that:

(i) there was an oral understanding between Olga's Restaurants of Hayward, Inc./Robert B. Solomon and Dr. Michael Papo, M.D. that the mall lease would be assigned as additional security for the Equipment Lease ("Assignment"),

(ii) the Assignment was never completed despite the intent of the parties to do so,

(iii) the purpose of the Assignment was to permit Dr. Papo to take over the mall space and operate the enterprise in the event of a default, and

(iv) the consent of the landlord was understood and presumed and would not have been a problem in 1978 as the mall was not fully leased at that time.

Assuming these facts are true (and assuming the "understanding" was in writing), they may have constituted sufficient inquiry. If Olga's had legally effectuated this alleged understanding that its underlying mall lease was to be security for the equipment lease, Papo would have controlled the mall lease and, therefore, would have had control over the Olga's restaurant. This might have justified a value-in-use approach since Papo might have had a justifiable expectation of being able to foreclose on the equipment lease and take over Olga's as a going concern. However, no such "understanding" as to the mall lease was testified to at trial. Nor could parol evidence have been presented as to such an understanding. The equipment lease was in writing and in evidence. M.S.A. § 19.-2202; Michigan Compiled Laws § 440.2202 provides: "Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement...." Further, paragraph 19 of the equipment lease provides: "This Lease sets forth all the terms, provisions, covenants, conditions, agreements, promises and understandings between Lessor and Lessee; and no alteration, amendment, change or addition shall be binding upon Lessor and Lessee unless in writing and signed by each party." Olga's and Papo gave no indication that the equipment lease was other than their final intention. The mall lease was not security for the equipment lease. The affidavit not only fails to justify a value-in-use method for the leasehold improvements and equipment, it also fails to show reasonableness of inquiry before the filing of the counterclaim. Neither Papo nor his attorney "reasonably inquired" into the $350,000.00 value before asserting it in their response to the complaint.

■ What was needed in January of 1984, at the time Papo finally filed his answers to the complaint and the counterclaim, was the appraisal that was not made until the fall of 1984. The facts as I have described them establish a violation of Rule 11 on the issue of valuation. There was no reasonable inquiry made prior to the filing of the counterclaim. It is not necessary that I "scrutinize the unfathomable processes of [counsel's] mind." *Mohammed v. Union Carbide Corp., supra,* at 261.

2.

■ The affidavit, however, does have some efficacy; it appears to implicate Papo in the ungrounded position advanced by his pleadings. Contrary to his attorneys' contention that Papo's beliefs were unknown, the affidavit appears to show that Papo played a real role in this case. As such, Papo himself may be held liable along with his attorneys for the violation of Rule 11.

### 3.

■ That Olga's initially put a value on the leasehold improvements, while I found they had no market value, does not support Papo's contention that Olga's could not have incurred any additional expenses in resisting Papo's $350,000.00 figure. Whether Olga's initially advanced a "no value" figure or the figure it initially presented, it would still have incurred unnecessary expenses in challenging Papo's unsupportable valuation.

### 4.

■ I am not sanctioning Papo and his attorneys simply for advancing a position that was eventually unsuccessful on the merits. Considering the true nature of the transaction between the parties, as more fully described in the Opinion, no court could reasonably have found that Papo was entitled to $350,000.00 in exchange for plaintiff's keeping possession of the leasehold improvements and equipment at the end of the five year term.

Papo places a good deal of weight on a separate case between the parties as justifying the reasonableness of his position in this case. Papo is wrong. The decision in *Papo v. Aglo Restaurants of San Jose, Inc.*, Oakland County Circuit Court Case No. 80–202639–CZ, Opinion and Order of June 29, 1984, actually supports my conclusion as to the unreasonableness of Papo's position in this case.

On June 1, 1978 a similar equipment lease between Papo and Aglo Restaurants of San Jose, Inc. (the corporate predecessor to Olga's), became effective for an Olga's restaurant in a mall in San Jose, California. It was for a five year term and provided for a monthly rental of $8,609.00, arrived at in the same manner as the equipment lease in this case. In July, 1979 when the restaurant proved a financial burden, Aglo closed the restaurant and removed the equipment without notice to Papo. The leasehold improvements, since they could not be removed, were left behind. In December, 1979 Papo accelerated the balance due on the rent payments and demanded the equipment. In January, 1980 Papo sued Aglo. Aglo continued paying the monthly rent and on May 31, 1983 attempted to exercise the option to purchase. During the course of the case the parties stipulated that the equipment lease contained all the terms and conditions Papo wanted, and that the leasehold improvements could not be removed at the end of the terms of the equipment lease.

The state court in Papo's suit for breach of contract made a number of significant findings:

—the leasehold improvements at the end of the equipment lease had a value of $16,939.00 on a piecemeal basis;

—the equipment at the end of the equipment lease had a value of $18,063.00;

—there had been no modification or waiver of any of the terms of the equipment lease during its term;

—Aglo breached the terms of the equipment lease by removing the equipment in advance of the end of the lease without notice to Papo and by using it at another location;

—Papo was entitled to accelerate the balance of rent payment and was entitled to 28% of the monthly rent for the holding over of the equipment by Aglo; however, Papo was not entitled to any rent on the leasehold improvements since they could not be returned at the end of the equipment lease;

—Aglo had no right to exercise the option to purchase the equipment since it was in default at the end of the equipment lease because it had wrongly removed the equipment.

No mention was made in the decision of a value-in-use method of valuation, but rather the state court discounted for many factors so that most of the original investment cost of the leasehold improvements was not recoverable. The decision clearly gave recognition to the relatively modest value of the equipment if removed at the end of five years and noted that the leasehold improvements really had no value to Papo at the end of the five year equipment

lease. Nothing in the decision suggested Papo had a right to decline the exercise of the option to purchase by the tenant because of a disagreement as to whether there was a delinquency in the rent because of failure to pay interest on late payments where no claim for the interest had been made prior to the end of the equipment lease and exercise of the option. Additionally, it should be recognized that the state court decision was handed down some six months after the answer and counterclaim were filed, and Papo made no change in his position in this case following June 29, 1984. On the contrary, it appears that Papo's appraiser was specifically instructed to use value-in-use in November, 1984, presumably in recognition that the valuation by Olga's in this case was consistent with the findings in the state court decision. Importantly, the state court accepted the appraisal figures of the expert for Olga's.

### B.

Olga's also argues that Papo's denial of paragraphs 8 and 10 of the complaint in his answer violated Rule 11. (Paragraph 8 alleged that Olga's had timely exercised the option to purchase; paragraph 10 alleged Olga's was ready, willing, and able to purchase the leasehold improvements and equipment at fair market value.) Olga's further argues that paragraphs 4, 10, 12, and 13 of the counterclaim, and section A(b) of the Joint Pre-Trial Statement, were without merit. (These paragraphs addressed Papo's arguments regarding plaintiff's default and conversion of the leasehold improvements and equipment.) In support, Olga's says that I found Papo's claim of default to be frivolous. While I did not use the word "frivolous," I did say that Papo's default argument was an "afterthought" and thus did not merit consideration.

■ Papo argues in response that he "believed that the fair measure of damages was the Fair Market Value of the use of such Equipment and Leasehold Improvements (i.e., hold over rent) in lieu of inter-est." Defendant's Answer to Plaintiff's Application for Cost and Attorney Fees, at 17. As indicated above, the 1983 amendments to Rule 11 reject a subjective test. A subjective test would eviscerate Rule 11, since "there is no position—no matter how absurd—of which an advocate cannot convince himself." *Wells v. Oppenheimer & Co., Inc.,* 101 F.R.D. 358, 359 n. 3 (S.D.N.Y. 1984), *vacated on other grounds,* 106 F.R.D. 258 (S.D.N.Y.1985). The test here is whether there was a reasonable basis in fact and law for Papo's holdover argument. I said in the Opinion there was not; I remain convinced there was not.

■ Papo relies upon the decision in the state court case, *supra,* for the reasonableness of its holdover position. The court there awarded holdover rent as damages for the equipment retained after the expiration of an equipment lease identical in terms. The court grounded its ruling in the language of the equipment lease that provided for the continuation of rental payments after the expiration of the original lease term for as long as the lessee retained the equipment. (The state court declined to award holdover rent for the leasehold improvements because these could not be returned at the end of the equipment lease.) The state court's award of holdover rent for retention of the equipment is unpersuasive and unlikely to win approval from a higher court. Such an interpretation would bind a lessee to pay rent for equipment long after it had lost its "fair market value," even though the terms of the equipment lease demonstrated a willingness on the part of the lessor to part with the equipment for "fair market value." There is nothing in the record of this case to show that Papo ever expected Olga's not to exercise the option to purchase the equipment. The result of the state case is to require that rent be paid to the lessor long after the lessor has fully recovered his investment in the equipment. While this fact alone would not be grounds for avoiding rent payment, it is sufficient grounds where the lessor can singularly reject the lessee's offer to purchase, thus

turning the lessee into a holdover at his unfettered discretion.

Papo also argues that the state court decision would have awarded holdover rent for the leasehold improvements had the lessee not moved the equipment to other premises. Papo argues that this would have resulted because, if the lessee had not moved to new premises and had to finance new leasehold improvements independent of the lessor, the lessee would have retained the benefit of the leasehold improvements at the first location financed by the lessor and thus would have had to pay holdover rent for the use of those improvements. In this argument, I am constrained to say Papo reaches new heights of fatuousness in an attempt to justify his trial position. I am convinced that not even the state court would have adopted this argument. The state court's rationale for awarding holdover rent for the equipment was grounded in the realization that the *equipment*, at least, could be removed and returned to the lessor. It did not justify holdover rent on a theory of the lessee's unjust enrichment. It explicitly noted that holdover rent was not proper for leasehold improvements because these could not be returned to the lessor. To hold otherwise would bind the lessee to rent payments for the leasehold improvements long after expiration of the equipment lease because they could not be removed.

### C.

Olga's also argues Papo violated Rule 11 in filing a third-party complaint against Robert B. Solomon (Solomon) because no reason was shown by Papo "why the corporate veil should be pierced so as to allow a claim against an individual." I am satisfied that Papo appropriately filed a third-party complaint against Solomon. The equipment lease was personally guaranteed by Solomon, and therefore he was potentially liable to the same extent as was Olga's on the claim for past due rent.

### D.

Lastly, Olga's argues that paragraph 13 of the counterclaim asking for punitive damages of $1,000,000.00 was totally without merit. Papo does not even attempt to justify this position. There is simply no basis in law for the punitive damages claim. *See Caradonna v. Thorious*, 17 Mich.App. 41, 169 N.W.2d 179 (1969) (punitive damages may not be awarded even for deliberate breach of contract except under special circumstances rarely present when contract breached is an ordinary commercial contract). Papo violated Rule 11 in making this claim. The claim was so unjustified that Olga's admittedly did not have to expend any amount of time in responding. This claim, however, is an indicia of the general frivolousness of Papo's pleadings and is certainly the kind of casual pleading style that Rule 11 is designed to deter.

### V.

### A.

Olga's claims attorney's fees for violations of Federal Rules of Civil Procedure 16 and 26 occasioned by Papo's general pretrial and discovery conduct. Specifically, Olga's points out that a default was entered on January 3, 1984 for Papo's failure to answer the complaint. Olga's moved for entry of a default judgment on January 17, 1984, but stipulated to withdraw the default when Papo agreed to answer. Olga's also served interrogatories on Papo on April 11, 1984. When Papo did not answer or object by May 25, 1984, Olga's moved to compel a response. I issued an order to compel on July 18, 1984, giving Papo fifteen days to respond. The answers were not filed until October 5, 1984.

In response, Papo says that Olga's has alleged no action or inaction on his part that violates the rules. This is not true. Papo was more than two months late in complying with the order of July 18, 1984, requiring answers to Olga's interrogatories under Rule 37(a)(2). This is a violation of Rule 37(b)(2), for failure to "obey an order to provide or permit discovery, including an

order made under subdivision (a) of this rule...." It is also a violation of a pretrial order under Rule 16.

In my order of July 18, 1984, I reserved the right to impose sanctions. The lateness of Papo's answers clearly justifies the imposition of a monetary sanction for failure to comply with the order. Papo has not shown substantial justification for the failure to timely obey the order or other circumstances that would make an award of expenses unjust; instead, Papo contends that he obeyed the order because he eventually submitted answers.

█ The general indifference of Papo's attorney to the discovery rules, as I noted in the Opinion, also supports a sanction under Rule 37(b). In light of Papo's casual approach to this case, it is appropriate to sanction Papo and his counsel based on the totality of their discovery conduct. *See, e.g., Scott v. Eddings*, 698 F.2d 1223 (6th Cir.1982) (unpublished order) (affirming dismissal with prejudice under Rule 37(b) for repeated failure "to comply with court orders and discovery requests"); *Chapman v. Schnorf*, No. C–80–263 (N.D.Ohio June 29, 1984) (Opinion and Order) (dismissing case and awarding fees under Rule 37 because of "actions and inactions by plaintiff which, when viewed as a whole can only be characterized as a repeated and flagrant disregard for ... the orders of this Court and the requirements of the discovery process.").

### B.

#### 1.

Olga's also argues that it incurred unnecessary expenses in taking the deposition of Carl Bloomquist, Papo's expert appraiser, because his valuation method, as directed by Papo, was rejected by me. Olga's says that the inconsistency of Papo's valuation of the equipment, particularly the shift of his expert's theory and calculations as to valuation at the trial, rendered the earlier deposition "of no value." Plaintiff's Application, at 12. Olga's says this change in the substance of the expert's testimony

violated Federal Rule of Civil Procedure 26. Papo responds that Olga's also changed its position on valuation, originally offering a value of $34,147.00 and later offering testimony to the effect there was no value to the leasehold improvements.

#### 2.

█ I have already commented in the Opinion about the inconsistency shown by both parties on the valuation issue. I also noted that Papo was "egregiously" more inconsistent than Olga's. However, the inconsistency shown by Papo did not significantly affect plaintiff's position on the valuation issue; Olga's generally opposed Papo's various figures by presenting its own figures. Papo's values were all so patently unjustified by the facts that the sanction for Papo's method of valuation encompasses a sanction for variations on that theme. On the other hand, Olga's is justified in seeking recovery of the expenses of attending the deposition of Bloomquist since his testimony was a part of Papo's unjustified approach to valuation.

### VI.

#### A.

█ The above discussion has made clear that, while Papo prevailed on the issue of delinquent interest and his position on certain other issues did not significantly affect plaintiff's position in this case, the actions of Papo and his counsel as a whole were unjustified. Further, although I have addressed the positions taken by Papo on each of the major issues in this litigation, I do not intend to tie the sanction to each discrete issue. "It is neither appropriate nor feasible to allocate sums to the particular acts of misconduct. Each such act had the same intended result. Thus, whether dealing with a violation of Rules ... 11, 26(g), or 28 U.S.C. § 1927, the impact upon the plaintiff was as intended: the proceedings were attenuated and protracted and, litigating in good faith, plaintiff incurred substantial excess costs, expenses and attorneys' fees it would not otherwise have had to sustain." *Itel Containers Int'l*

*Corp. v. Puerto Rico Marine Management, Inc.*, 108 F.R.D. 96, 105 (D.N.J.1985) (Order and Opinion) (Lacey, J.).

The same is true here. Thus, although the major part of the sanction is tied to plaintiff's actual attorney's fees and costs, the sanction does not perfectly reflect these expenditures. It is difficult to say with certainty what portion of plaintiff's attorney's services were made necessary only because of Papo's positions in this case and what services would have been required in pursuit of plaintiff's claim regardless of Papo's positions. Some of the arguments made by Papo, while unjustified, did not require substantial expenditures in response. Further, as I have indicated before, both parties can be faulted generally for the inconsistent positions taken on the valuation issue.

Olga's claims $27,968.75 for the following 223 hours of legal services:

—$5032.50 (39.25 hours) for answering and defending against the third-party complaint, including disproving Papo's valuation;

—$4290.00 (33.00 hours) for answering and defending against the counterclaim, including the punitive damage demand and work on the contract issues;

—$9652.50 (74.25 hours) for work generally related to the valuation and contract issues, but not traceable to any particular pleading;

—$65.00 (.50 hours) for answering interrogatories, including Interrogatory No. 5 on valuation;

—$292.50 (2.25 hours) for working on the joint pretrial statement, including valuation and contract issues;

—$3250.00 (25 hours) for work relating to Bloomquist's deposition;

—$617.50 (4.75 hours) for responding to affirmative defenses raised for the first time in Papo's trial brief;

—$845.00 (6.5 hours) for preparing motions made necessary by Papo's lack of pretrial cooperation; and

—$3477.50 (26.75 hours) for post-trial attorney work, including work on the fee applications, and $376.25 (10.75 hours) for post-trial paralegal work at $35.00 an hour.

Olga's generally takes the position that all of its time at trial is recoverable, on the grounds that the trial was made unnecessary because of Papo's ungrounded positions in this litigation.

■ Papo does not challenge the $130.00 hourly rate of counsel for Olga's. I find this to be a reasonable rate for attorneys of like experience in the local area. Papo does, however, challenge certain items as excessive, as inaccurate, or as not incurred because of his position in this litigation. He suggests a sanction of $1081.51. Specifically, Papo says he should not be liable for:

—Time spent defending against the third-party complaint, except for 2.75 hours attributable to meetings with J. Messer (appraiser witness for Olga's) on the issue of valuation;

—Time spent defending against the counterclaim, since Olga's does not identify such time as related to the valuation issue;

—Other time traceable to the above documents, except for 2.25 hours arguably related to valuation;

—Time spent preparing the joint pretrial statement, since Olga's had to prepare this document irrespective of Papo's position;

—Time related to Bloomquist's deposition, except for 1.50 hours required to reprepare for examining him after he changed his theory in the middle of trial;

—Time related to affirmative defenses raised for the first time at trial, since they were unrelated to the valuation issue;

—Time related directly to the trial, since the parties would have gone to trial anyway on the issue of interest on delinquent rent;

—Time spent preparing motions to force action by Papo, on the grounds that the Stipulation Setting Aside Defend-

ant's Default acts as a waiver of sanctions, and because I never ordered sanctions for Papo's delinquency in producing documents.

 Papo's responses to the application demonstrate a singular unawareness of my concern for the wide variety of problems with his posture in this case. As I have made clear, his position on valuation was not his only ungrounded approach to the issues in this case, although his responses to the application reduce all of my concerns to that one issue. Also, Papo suggests that a sanction is proper only when the court has reserved that right earlier in the litigation, despite the clear language of the Federal Rules of Civil Procedure to the contrary.

 Neither party has sufficiently identified what portion of the work performed by counsel for Olga's was made necessary by Papo's positions on specific issues, though this does not prevent an award of fees as a sanction. While Rule 11 allows a court to award a reasonable attorney's fee "because of the filing of the pleading, motion, or other paper," there is no requirement that I make a determination as to the time spent on each and every issue in the pleadings. *See Itel Containers, supra.* I have already indicated that Papo's positions in the pleadings were *generally* unfounded. I am only awarding attorney's fees of $15,911.25, however, because much of the time described by Olga's was not made necessary by Papo's positions in the pleadings and would have been required in preparation for trial anyway; because Papo was justified in filing a legitimate third-party complaint against Solomon; and because Papo prevailed on the issue of interest on delinquent rent. A sanction of $15,911.25 represents 92.75 hours of work before and during trial at $130.00 an hour (one-half the time described by Olga's), and 26.75 hours of work after trial at $130.00 an hour plus 10.75 hours of paralegal work at $35.00 an hour, which was for work related directly to the application and responses. This figure is reasonable in light of the extra work that could reasonably be expected to have been required by Papo's unfounded positions, and also in light of Papo's discovery and filing abuses during the pretrial phase of this litigation.

 Because I was put to substantial effort by the circumstances of this case, Papo and his counsel are also directed to pay $1000.00 to the Clerk of the Court under Rule 11. Judge Lacey's sanction opinion in *Itel Containers, supra,* makes clear that I am not alone in expressing dissatisfaction with parties whose unfounded efforts require the unnecessary consumption of judicial resources. Judge Lacey said: "The court has maintained no records on the court's time consumed in chambers and on the bench. Certainly it was considerable, and defendant's counsel knew it would be, given the various issues raised on the several matters placed before the court.... That sanctions should be imposed for the abuse of the judicial process as it directly impacted upon the court is clear." Slip Op. at 22. Judge Lacey imposed a $5000.00 sanction, to be paid to the government, and recommended that no less than $500.00 would be appropriate should his fine be reduced on appeal. While I have imposed a lesser award, I wholeheartedly concur in his method. *See, e.g., Hassain v. Genesee County Jail,* No. 81–40159 (E.D.Mich. Jan. 22, 1985) (Memorandum Opinion and Order); *American Golf Dome, Inc. v. Air Structures Int'l, Inc.,* No. 84–CV–0740–DT (E.D.Mich. Jan. 16, 1985) (Order); *Snyder v. IRS,* 596 F.Supp. 240 (N.D.Ind.1984).

### B.

### 1.

Olga's also relies upon statutory provisions and rules that provide for routine awards of costs, particularly 28 U.S.C. §§ 1920(2), 1920(4), and Federal Rules of Civil Procedure 11 and 54. Rule 54 provides that "costs shall be allowed as of course to the prevailing party unless the court directs otherwise...."

 Section 1920(2) permits taxation of costs for depositions. To be compensable, depositions must be reasonably necessary for use in the case. *Kaimowitz v. Howard,* 547 F.Supp. 1345 (E.D.Mich.1982), *aff'd,* 751 F.2d 385 (6th Cir.1984). Depositions are not ordinarily taxable when for purposes of investigation or preparation for trial. *Hill v. BASF Wyandotte Corp.,* 547 F.Supp. 348, 351 (E.D.Mich.1982).

 Section 1920(4) permits taxation of costs for "exemplification and copies of papers necessarily obtained for use in the case." Duplication of exhibits is a taxable item. *Bass v. Spitz,* 522 F.Supp. 1343 (E.D.Mich.1981). Even where there is no detailed description of how each document copied was used, several courts have accepted the movant's attorney's certification of the copies as necessary to the case as sufficient to permit taxation. In *Huebschen v. Department of Health and Social Services,* 547 F.Supp. 1168 (W.D.Wis.1982), *rev'd on other grounds,* 715 F.2d 1167 (7th Cir.1983), the court taxed copying labeled "September copying" without requiring a description of exactly how each copy was used. Similarly, in *Waters v. Heublein, Inc.,* 485 F.Supp. 110, 116 (N.D.Cal.1979), the court taxed what the losing party's counsel called "ordinary office xeroxing."

 28 U.S.C. §§ 1920(3) and 1821 specifically authorize witness allowances only for appearance at trial, subsistence, and travel. *Mastrapas v. New York Life Ins. Co.,* 93 F.R.D. 401 (E.D.Mich.1982). Witness fees may be taxed for any time the witness reasonably and necessarily attended trial, not merely the day on which that witness testifed. *Id.* However, § 1821 sets a maximum daily fee of $30.00, which applies to expert witnesses, too. *Id.* Requests for expert witness fees in excess of the § 1821.statutory amounts are ordinarily denied. L. Bartell, *Taxation of Costs and Awards of Expenses in Federal Court,* 101 F.R.D. 553, 582–83 (1984), citing *Northcross v. Board of Education,* 611 F.2d 624, 642 (6th Cir.1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980).

Finally, Olga's relies on Rule 11's allowance of expenses where the above provisions do not allow recovery as a matter of course. Rule 11 allows for recovery of expenses, in addition to a reasonable attorney's fee, when incurred because of the opposing party's pleadings. Also, courts that have closely examined the issue of whether statutory provisions permitting an award of a reasonable attorney's fee also embrace other litigation costs have concluded that they do. 101 F.R.D. at 592. The Sixth Circuit has held that such provisions allow a court to award out-of-pocket expenses, in addition to statutory costs and the hours-times-billing-rate (as adjusted) fee figure, where they were necessarily incurred "in furnishing effective and competent representation." *Northcross,* 611 F.2d at 639. Although *Northcross* dealt with congressional intent under 42 U.S.C. § 1988, the application of this language to Rule 11 is supported by Rule 11's allowance of "expenses" and the liberalizing 1983.amendments to the rule.

2.

Olga's claims $6398.56 in costs and expenses for the following items:

—Bloomquist's deposition

—$430.00 for travel

—$181.36 for lodging

—$236.50 for the transcript;

—$122.50 for Papo's deposition transcript;

—$36.00 for an unidentified transcript;

—$414.10 for copying;

—$4831.75 for expert witness fees; and

—$146.35 for unidentified travel.

Papo objects to the itemization of costs on the following grounds:

—The travel and lodging associated with the Bloomquist deposition were allegedly part of a vacation planned in advance;

—Papo's deposition was not used at trial;

—Expert witness fees should be allowed only for attendance at trial.

3.

The deposition transcript of Bloomquist was used at trial and is taxable under 28 U.S.C. § 1920(2) as "necessarily obtained for use in the case." Thus, $236.50 is taxed to Papo and his counsel. Unlike the Bloomquist deposition, the transcript of the Papo deposition was not used at trial. Olga's argues that any well-prepared counsel would have taken his deposition. Papo's deposition touched upon the valuation issue, and as discussed above, it is clear that Papo played a material role in this litigation, including the attempt to justify the rejected method of valuation. Counsel for Olga's were justified in deposing Papo in order to represent their client effectively and competently. *See Northcross, supra.* Thus, Papo and his counsel are ordered to pay $122.50 for his deposition transcript. The unidentified transcript that cost $36.00 is not properly taxable because Olga's has failed to provide any evidence as to its nature and whether it was necessary for trial.

*Northcross* also held that a court awarding a reasonable attorney's fee under statutory authority may allow recovery for other "reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." The Sixth Circuit said that this may include "[r]easonable photocopying, paralegal expenses, and travel" costs. 611 F.2d at 639. Olga's claims $430.00 for travel to attend the deposition of Bloomquist, and $181.36 for one night's lodging. There is nothing in the record to substantiate Papo's argument that counsel for Olga's took the deposition as part of a pre-planned vacation. These are reasonable out-of-pocket expenses associated with Bloomquist's deposition which would normally be charged to the client. As such, Papo and his counsel are ordered to pay $430.00 and $181.36 to Olga's under Rule 11 for these expenses. Because Olga's has not identified the purpose of the $146.35 entry for travel, this item is not properly taxable or recoverable as an expense.

28 U.S.C. § 1920(4) allows for recovery of photocopying costs only where "necessarily obtained for use in the case." Olga's does not describe the purpose of each photocopy for which it claims costs, but Papo does not challenge the $414.10 amount. It is not necessary to determine whether each of the photocopies was necessary for plaintiff's case, because *Northcross* also allows for recovery of photocopying expenses with an award of attorney's fees. Olga's has documented that the photocopying expenses were actually incurred, and I find that the amount was reasonable for preparation of its case. Thus, Papo and his counsel are ordered to pay Olga's $414.10 for photocopying.

Finally, Olga's claims $4831.75 for the fees of two expert appraisers who testified at trial, J. Messer and H. Gedrich. This was a reasonable number of witnesses for this type of case. Their fees were $100.00 and $75.00 an hour, respectively. I find these to be reasonable rates. Papo objects to the $4381.75 figure on the grounds that it represents not only time the witnesses attended trial, but also their preparation for trial. Papo says that 28 U.S.C. § 1920 does not allow taxation of costs for preparation for trial. Also, while Olga's has presented an itemized description of Gedrich's bill, it has submitted only a total hours and fee statement for Messer.

Olga's seeks recovery, however, under Rule 11's provision for a sanction including "expenses" reasonably incurred because of the opposing party's filings. The appraisers were needed to disprove Papo's theory of valuation in this litigation. Gedrich, the first appraiser at trial, offered a value of $20,312.00 for the leasehold improvements. Messer, the second appraiser at trial, opined that the leasehold improvements really had no fair market value. I found Messer's testimony more persuasive than any testimony in the record. Opinion, at 8. While Olga's might have relied on only one appraiser to discredit Papo's inflated valuation, it was reasonable to use two appraiser witnesses, especially since the second witness supplied the testimony

that was the basis of my Opinion rejecting Papo's valuation. I conclude that the fees charged by these two witnesses, including their preparation for trial, were made reasonably necessary by Papo's position on the central issue of valuation in this case. As such, Papo and his counsel are ordered to pay $4381.75 to Olga's for its witness fees as expenses under Rule 11.

Totalling these figures, Papo and his counsel shall pay to Olga's $5766.21 for costs and expenses incurred in this litigation.

## VII.

For the above reasons, Papo and his counsel shall pay $21,677.46 to Olga's and $1000.00 to the Clerk of the Court as a sanction.

SO ORDERED.