Walter E.
THORNTON–TRUMP, Plaintiff,

v.

The UNITED STATES, Defendant,

and

Abex Corporation, FMC Corporation,
and Landoll Corporation,
Third-Party Defendants.

No. 699–84C.

United States Claims Court.

April 6, 1987.

Roger D. Greer, Chicago, Ill., for plaintiff. Welsh & Katz, of counsel.

Oscar A. Towler, III, with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.

Thomas S. Baker, Jr., Columbus, Ohio, for Abex Corp.

Raymond P. Niro, Chicago, Ill., for FMC Corp. and Landoll Corp. Niro, Scavone, Haller & Niro, of counsel.

WIESE, Judge.

In this motion, two third-party defendants, FMC Corporation and Landoll Corporation (hereinafter "defendants"), ask the court to impose sanctions upon plaintiff's counsel for alleged violations of RUSCC 26 (g) and Appendix G—"Procedures Before Trial". Defendants assert that they were put to the expense of conducting a useless deposition as a result of erroneous information contained in plaintiff's answers to interrogatories. Defendants contend that the mistaken answers were submitted by plaintiff's counsel without reasonable inquiry into their factual accuracy.

For his part, plaintiff denies that his counsel failed to conduct a reasonable inquiry, and further contends that sanctions are inappropriate absent evidence of bad faith or intentional evasiveness. He alleges that defendants' motion was brought for purposes of harassment and cross-moves for attorney's fees incurred to oppose the motion.

Briefs were submitted, and oral argument was heard on February 19, 1987. The court, having fully reexamined the arguments of counsel, now reaffirms its bench ruling holding that a sanction—in the form of defendants' reasonable attorney's fees—should be imposed. The court further concludes that such sanction should run against plaintiff as well as his counsel. Accordingly, for reasons explained herein, defendants' motion is granted, and plaintiff's cross-motion is denied.

### Facts

On December 28, 1984, plaintiff filed a complaint in this court alleging that the Government infringed upon his patent. Paragraph 4 of the amended complaint alleges that the Government used aircraft de-icing equipment, manufactured either by or for it, which infringed on plaintiff's patented de-icing method. In an effort to learn the factual foundation for the allegation, defendants served plaintiff with interrogatories. Two of those interrogatories are relevant here. In "Interrogatory No. 4", defendants asked the following:

Identify each person or company, who has been charged directly or indirectly with the infringement of the patent in suit, whose attention has been called to such patent, or who is believed by plaintiff to have manufactured or sold a product capable of practicing the methods defined in any of the claims of the patent in suit, and if such event has occurred:

(a) State the date when each such event occurred and identify those persons having knowledge of such event;

(b) Identify every document or other tangible thing relating to each such event; and

(c) Identify any actual or alleged prior art relating to the patent in suit called to the attention of plaintiff by any such person or company.

Plaintiff responded in the following manner:

Trump objects to Interrogatory No. 4 as being vague and indefinite, because it calls for identification of a person or company that may have been charged directly or indirectly with infringement or whose attention has been called to the patent in suit by someone other than Trump or his employees. Additionally, it is objected to as being vague and indefinite for the reason that it is not known what an "event" is in the context of this interrogatory or whether a belief by plaintiff constitutes an event. It is further not known what is meant by actual as opposed to alleged in the context of prior art. Further, the interrogatory is objected to to the extent that it calls for privileged information, i.e., attorney/client or attorney work product information.

Without waiving any of the above objections, reference is made to the amended complaint for a listing of companies who respond to one or more of the categories requested. *Ted Trump and Bill Dempsey have knowledge of the companies so identified* * * *. [Emphasis added.]

In "Interrogatory No. 6", defendants asked the following:

With respect to the allegations made in paragraph 4 of plaintiff's Amended Complaint, state separately each fact presently known to plaintiff that supports each such allegations [sic], identify the persons having knowledge of each such fact, and locate and identify all documents that refer, relate to or comment upon each such fact.

Again, plaintiff replied with objections:

Trump objects to Interrogatory No. 6 as being vague and indefinite, in part due to the open ended narrative form of the interrogatory which is objected to for the reasons stated in the response to Interrogatory No. 1. Further, Trump has no way of knowing whether it has supplied "each fact" or how each fact supports an allegation. Further, Trump objects to identification of third persons having knowledge of facts who are not within the control of Trump. Trump further has no knowledge of the identities of third parties who have knowledge of such facts and further has no control over documents that refer, relate or comment upon such facts.

Without waiving any of the foregoing objections, *Ted Trump and Bill Dempsey have knowledge which supports the allegations of paragraph 4 of plaintiff's amended complaint.* [Emphasis added.] The answers were signed by both plaintiff and his counsel.

Defendants did not elect to proceed with a motion to compel answers to their interrogatories, but instead, proceeded with depositions of both Mr. Trump and of his employee, Mr. Dempsey. The deposition of Mr. Dempsey revealed that he had no knowledge whatsoever of any facts underlying the infringement allegation. Rather, Mr. Dempsey stated that he had never read the patent in question, had conducted no inquiry into whether the patent had been infringed, was unaware of any such inquiry conducted by anyone else, and had never observed any de-icing equipment manufactured by any of the defendants being used at any Government installation. When asked specifically if he possessed any information at all that would support plaintiff's claim, Mr. Dempsey replied: "I don't really have any knowledge in that you're getting into areas that I don't deal with. In selling the equipment, how it's used, et cetera, I don't get into the patent. I don't understand the patent that well." Because of Mr. Dempsey's complete lack of knowledge of any facts supporting plaintiff's allegations, his deposition amounted to a waste of time and money.

### Discussion

Defendants ask the court to award them reasonable attorney's fees incurred in the deposition of Mr. Dempsey. They argue that plaintiff's answers to Interrogatories No. 4 and 6 violated RUSCC 26(g) and Appendix G, ¶ 7 because they were proffered by plaintiff without a reasonable inquiry into their accuracy. The court agrees. We further reject plaintiff's contention that the rules of this court require evidence of subjective bad faith or intent to give evasive answers before attorney's fees can be imposed as a sanction.

Putting one's signature on a document submitted to this court is not an act to be taken lightly. Our rules place a significant burden on parties and their counsel to act in a responsible manner, even before a complaint is filed. RUSCC 11 requires that every pleading, motion or other paper submitted to the court must be signed by the party or his counsel. By his signature, the party or attorney certifies, among other things, that the submission is "to the best of his knowledge, information, and belief *formed after reasonable inquiry * * * well grounded in fact*". (Emphasis added.) The rule goes on to provide that if a pleading, motion or paper is filed in violation of the above stated rule, the court "shall impose" an appropriate sanction, including a reasonable attorney's fee, for the expenses incurred by the opposing party as a result of the violation.

Thus, on its face, Rule 11 imposes a duty upon parties and their attorneys to conduct a reasonable inquiry into the accuracy of papers filed with the court and authorizes an award of attorney's fees as a sanction if that duty is not met. *DYN*

*Logistics Services, Inc. v. United States,* 6 Cl.Ct. 353, 362–63 n. 12 (1984). The rule makes no exception for violations that result from "mere" negligence, as opposed to subjective bad faith.

Furthermore, RUSCC 11 is patterned directly after Fed.R.Civ.P. 11, which was amended in 1983 specifically to eliminate the prior requirement that bad faith be shown before sanctions could be imposed. *See Notes of Advisory Committee* (hereinafter *Notes* ), *reprinted in* 97 F.R.D. 165, 198–201 (1983). As the Advisory Committee stated, "The new language is intended to reduce the reluctance of courts to impose sanctions, see Moore, *Federal Practice* ¶ 7.05, at 1547, by emphasizing the responsibilities of the attorney and reenforcing those obligations by the imposition of sanctions." *Id.* at 198. The standard of reasonable inquiry, the committee went on to note, "is more stringent than the original good-faith formula and thus it is expected that a greater range of circumstances will trigger its violation." *Id.* at 198–99. Furthermore, the words "shall impose" in the last sentence of the rule "focus the court's attention on the need to impose sanctions for pleading and motion abuses." *Id.* at 200.

The comments of the Advisory Committee leave no doubt that Fed.R.Civ.P. 11 authorizes sanctions for a breach of the duty to conduct an objectively reasonable inquiry into the factual foundation of a submission. Accordingly, courts have uniformly concluded that sanctions may be imposed notwithstanding the absence of the offender's subjective bad faith. *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 828 n. 4, 831 (9th Cir.1986); *Indianapolis Colts v. Mayor & City Council of Baltimore,* 775 F.2d 177, 181 (7th Cir.1985); *Westmoreland v. CBS, Inc.,* 248 U.S.App. D.C. 255, 770 F.2d 1168, 1177 (1985); *Davis v. Veslan Enterprises,* 765 F.2d 494, 497–98 & n. 4 (5th Cir.1985); *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 253 (2d Cir.1985); *see also* Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look,* 104 F.R.D. 181, 191 (1983). Exactly the same reasoning applies to RUSCC 11.

The standard of reasonable inquiry under Rule 11 applies with equal force to answers to interrogatories. The pertinent rule, RUSCC 26(g), provides that the attorney must certify, among other things, that every answer to interrogatories is "to the best of his knowledge, information, and belief formed after a reasonable inquiry * * * consistent with these rules". Like Rule 11, Rule 26(g) authorizes sanctions, including a reasonable attorney's fee, for violations.

Also like Rule 11, Rule 26(g) is patterned after its counterpart Fed.R.Civ.P. 26(g). That section was added in 1983 to fulfill much the same purposes in the context of discovery as the revised Rule 11 was designed to fulfill in the context of pleadings. *See Notes,* 97 F.R.D. at 218–20. As the Advisory Committee stated:

> The subdivision provides a deterrent to both excessive discovery and evasion by imposing a certification requirement that obliges each attorney to *stop and think* about the legitimacy of a discovery request, a response thereto, or an objection. The term "response" includes answers to interrogatories * * *. [*Id.* at 218 (emphasis added).]

Although the attorney is not required to certify the truthfulness of the answers, he does have an obligation to conduct an inquiry reasonable under the circumstances. *Id.* at 219. Accordingly, courts have held that imposition of sanctions under Fed.R.Civ.P. 26(g) does not require proof of subjective bad faith anymore than Rule 11 does. *Olga's Kitchen of Hayward, Inc. v. Papo,* 108 F.R.D. 695, 701–02 (E.D.Mich.1985); *Perkinson v. Houlihan's/D.C., Inc.,* 108 F.R.D. 667, 674–75 (D.D.C.1985), *enforced,* 110 F.R.D. 55 (D.D. C.1986). Similarly, bad faith is not required for the imposition of sanctions under RUSCC 26(g).

Plaintiff's counsel nonetheless asserts that it was reasonable for him to rely on the representations of his client in answering interrogatories and that he should not now be held accountable for plaintiff's "faulty memory". The court cannot agree.

Before even bringing suit, the duty of reasonable inquiry compelled plaintiff's counsel to at least assemble those facts within plaintiff's possession that were basic to his claim, particularly in an area of law as complex and fact-specific as patent infringement. As part and parcel of such an inquiry, plaintiff's counsel surely would have obtained at least some familiarity with the knowledge possessed by both his client and the only one of his client's employees who was also purportedly acquainted with those facts.

Moreover, a diligent effort to answer defendants' interrogatories in the spirit of candor and cooperation mandated by our court's rules surely would have made plaintiff's counsel aware of Mr. Dempsey's lack of any knowledge pertinent to the infringement claim. If, instead of concocting what essentially amount to frivolous objections to the interrogatories, counsel had undertaken to assemble the facts in a point-by-point format (as quite reasonably requested by defendants' interrogatories), and if he had further complied with defendants' request to correlate each fact with the persons who had knowledge of it, at the very least this exercise in mental discipline would have given counsel reason to "stop and think" about whether it was reasonable to represent to defendants—and to this court—that Mr. Dempsey was knowledgeable about the facts underlying plaintiff's claim. It is inconceivable that a truly diligent attempt to respond to defendants' interrogatories would have failed to reveal what defendants' deposition ultimately did bring out: that Mr. Dempsey knew absolutely nothing about the case.[1]

The foregoing does not suggest, however, that in in every case it is unreasonable as a matter of law for an attorney to rely solely upon his client for the accuracy of answers to interrogatories. To the contrary, it is often the case that an attorney must rely upon his client's truthfulness. *See Notes*, 97 F.R.D. at 219. But on the facts here, plaintiff's counsel cannot be excused from responsibility for the needless discovery costs to which defendants were put as a result of flatly unfounded—if not dilatory—answers to interrogatories. Litigation in this court has become burdensome enough without innocent parties being forced to bear the costs of opposing counsel's neglect in developing the factual foundation of his case.

In addition, the court finds that sanctions against plaintiff also are appropriate. Rules 11 and 26(g) both leave it to the discretion of the court to impose sanctions on the client, as well as the attorney. Sanctions on the client for false answers to interrogatories are particularly appropriate where the party "played a real role in the case." *Olga's Kitchen*, 108 F.R.D. at 705. Here, plaintiff appears to have played not only a real role, but the only role, in providing answers to the interrogatories. He certainly was in a position to ascertain the true state of knowledge of his own employee before representing that Mr. Dempsey was aware of the facts relevant to the infringement claim. His "faulty memory" will not suffice as an excuse when the means to refresh that recollection were so close at hand.[2]

Finally, the court must determine the appropriate sanction to impose. Defendants request a total of $3,318, which represents the hours of attorney and paralegal time devoted to the Dempsey deposition, as well as a portion of travel and other expenses attributable to the deposition. Plaintiff does not challenge the fairness of the work hours or rates of compensation claimed. But he does assert that, because defendants conducted other depositions and

---

1. This conclusion is all the more warranted given that plaintiff was not called upon to respond to defendants' interrogatories until more than nine months after the complaint was filed. Thus, even if significant gaps in his factual inquiry could be accepted at the pleading stage, plaintiff's counsel had ample time in which to become familiar with the details of the case before answering the interrogatories.

2. Because the court finds that both plaintiff and his counsel failed to conduct a reasonable factual inquiry, it is not necessary to address defendants' contention that they also acted in bad faith.

discovery during the same trip to plaintiff's place of business, they should not be able to recover for any travel costs.

 Plaintiff's position misses the point. The purpose of sanctions is not only to compensate innocent parties for the discovery abuses of opponents. Its primary function is to deter the offending party— and, by that example, all other litigants— from violating the rules in the future. *See National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976). It is perfectly appropriate to attribute a reasonable portion of defendants' discovery expenses—including travel costs—to the useless deposition occasioned by plaintiff's violation of the rules. *See Perkinson*, 108 F.R.D. at 676–77 *and* 110 F.R.D. at 57. The fact that other depositions were conducted on the same trip does not prevent defendants from allocating a reasonable portion of the trip's expenses to the Dempsey deposition. To rule otherwise would, in effect, reward the offending party for the prudent schedule planning of his innocent opponent.

Because plaintiff does not dispute the reasonableness of defendants' costs—as opposed to the allocation of those expenses to the Dempsey deposition—the court accepts the figure offered by defendants as reasonable attorney's fees and related costs.

## CONCLUSION

For the reasons stated, the court orders plaintiff and his counsel to pay defendants' $3,318 as sanctions for their violations of the rules of this court.