**Nancy J. WELLS, Plaintiff,**

v.

**OPPENHEIMER & CO., INC., Harold Seltzer and William T. Eldridge, Defendants.**

**No. 83 Civ. 0807 (WK).**

United States District Court,
S.D. New York.

April 4, 1984.

Mangone & Schnapp by Elliot Schnapp, New York City, for plaintiff.

Rogers & Wells by James Benedict, David Schulz, New York City, for defendant Oppenheimer & Co., Inc.

Berger, Steingut, Weiner, Fox & Stern by Peter Stern, New York City, for defendant William T. Eldridge.

## MEMORANDUM AND ORDER

KNAPP, District Judge.

This motion presents an interesting test of the value of Rule 11 of the Federal Rules of Civil Procedure, as amended in 1983. The basic question presented is when should a party who has successfully defeated a motion for summary judgment be granted attorneys fees.

### BACKGROUND

The Complaint in this case was filed on January 28, 1983 and contained deficiencies which obviously invited motion practice on defendants' behalf. After those deficiencies had been dealt with, the defendants,[1] at a pre-trial conference held for that purpose, requested leave to make a motion for summary judgment. As is our custom in such situations, we explored the issues, expressed our view that motions for summary judgment in this Circuit were usually a waste of time and should be discouraged, and stated that it was, accordingly, our practice to be generous in awarding counsel fees to parties who successfully opposed such motions. Upon that understanding we allowed the defendants to proceed. When the motion came before us for argument we had little difficulty in concluding that questions of fact were obvious, and that the motion was a futile one.[2]

In opposing plaintiff's consequent motion for attorneys fees defendants' counsel have gone to great lengths in describing their research and their reasons for believing their motion to have been valid. Having no reason to doubt the veracity of counsel, we must conclude that they acted in *subjective* good faith in bringing the motion.

### DISCUSSION

The question therefore presented under Rule 11 is: must there be a finding of *subjective* bad faith before sanctions may be applied? It seems to us that the question answers itself. Given the nature of advocacy it would be well nigh impossible ever to establish that an advocate acted in "subjective bad faith." If that were the criteria the Rule might as well be repealed.[3] We think, therefore, that the Rule must mean that the Court may impose sanctions where it finds that there is no *objective* basis for an attorney's belief that a motion is "well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." F.R.Civ.P. 11. In this case we find no such basis and accordingly grant the plaintiff's motion. However, we hold in abeyance a determination of the amount of fees to be awarded until a final determination of the case. We believe that litigation on this point at this time would frustrate the goal of judicial economy and could have an ill effect on settlement possibilities.

SO ORDERED.

---

1. For purposes of this decision, the defendants we refer to are Oppenheimer & Co., Inc. and Harold Seltzer. Although defendant William Eldridge joined in the motion for summary judgment, he was not a moving force and merely relied on his co-defendants' papers.

2. Defendants' principal argument was that plaintiff's churning claim must be dismissed because neither Oppenheimer & Co. nor Seltzer (plaintiff's broker and an Oppenheimer employee) controlled the trading in plaintiff's account. They asserted that defendant Eldridge, an old family friend of plaintiff, directed the trading and controlled the activity in her account.

   Plaintiff contended the Eldridge's "management" of her account consisted of a "mutual consultive process" in which some recommendations originated with Seltzer and some with Eldridge. Plaintiff stated that Eldridge showed a "propensity to follow brokers' investment rec-

   ommendations," and that investment decisions were reached by "consensus" and "in consultation with Seltzer."

   These conflicting visions of reality were clearly set out in the many pages of deposition testimony attached as exhibits to defendants' motion for summary judgment. Such conflict made it objectively obvious that the Court would have to find the issue of control to be a question of fact. In addition, as a legal question, the mere fact that no discretionary authority was executed in favor of the broker is not dispositive of the issue. *Mihara v. Dean Witter & Co., Inc.* (9th Cir.1980) 619 F.2d 814, 821.

3. Having been many years at the Bar before being on the Bench, we know from our own experience that there is no position—no matter how absurd—of which an advocate cannot convince himself.