**Norris L. FRIEDLANDER, Plaintiff,**

v.

**John R. BARNES, Preston A. Peak, George S. Rooker, and Dorchester, Gas Corporation, Defendants.**

**No. 84 Civ. 533 (RLC).**

United States District Court, S.D. New York.

Oct. 21, 1985.

Pomerantz, Levy, Haudek, Block & Grossman, New York City, for plaintiff, Robert B. Block, Bruce G. Stumpf, of counsel.

Skadden, Arps, Slate, Meagher & Flom, New York City, for Individual defendants; Kurt Koegler, Gwen L. Feder, of counsel.

Willkie Farr & Gallagher, New York City, for defendant Dorchester Gas Corp; Stephen Greiner, James J. Calder, Arthur S. Gabinet, of counsel.

OPINION

ROBERT L. CARTER, District Judge.

On September 20, 1984, the court, in an opinion with which familiarity is assumed, conditionally granted plaintiff's motion for class certification in this private action claiming violations of federal securities laws.[1] *Friedlander v. Barnes*, 104 F.R.D. 417 (S.D.N.Y.1984). The class as certified includes all persons who sold defendant Dorchester Gas Corporation's ("Dorchester") stock between November 15, 1984 and November 30, 1984, inclusive. Defendants Dorchester and its senior management—defendants John Barnes, Preston Peak and George Rooker ("the individual defendants")—renew their arguments against certification of part of the class, i.e. those plaintiffs who sold their shares between

---

**1.** The pretrial order alleges violations of ¶ 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Securities and Exchange Commis- sion Rule 10b–5, 17 C.F.R. § 240.10b–5. The complaint had also alleged a violation of § 20 of the 1934 Act. Complaint, ¶ 1.

November 25 and November 30, in the form of a motion for partial summary judgment. Plaintiffs cross-move for sanctions pursuant to F.R.Civ.P., Rule 11. Defendant Dorchester moves to dismiss the individual defendants' cross-claims against it for indemnity and contribution, as well as for summary judgment on its own cross-claims for indemnity and contribution from the individual defendants.

The crux of the summary judgment motion against the plaintiffs is the relationship between two statements made by Dorchester. In the first, a proxy statement issued on November 15, 1984, the Board of Directors disclaimed any "knowledge at the present time of any specific effort to accumulate the Company's securities or to obtain control of the company."[2] The second was issued ten days later. After a day of unusually heavy trading of Dorchester stock,[3] Dorchester asked the American Stock Exchange to delay trading and issued a news release which read in part (the "November 25 release"):

> Dorchester Gas Corporation said today that it has received a number of inquiries relating to unusually active trading and price movement of its stock on the American Stock Exchange on Wednesday, November 23rd. George S. Rooker, Chairman and Chief Executive Officer, said he did not know the reason for the unusual activity, but that over a period of years Dorchester has often been the subject of unconfirmed rumors.
>
> Mr. Rooker said he was aware that a private company was attempting to arrange financing for a possible leveraged buy-out of the Company, the terms of which have not been determined. He said that the private company has had discussions with management regarding a participation in such buy-out.
>
> Mr. Rooker said Dorchester has received no offer relating to any acquisition or merger but that it is management's policy that, whan and if any firm offer is received, it would be publicly announced.

One week later, Dorchester issued a third release, (the "December 2 release") this time announcing that:

> the Board of Directors of Dorchester has unanimously approved an acquisition proposal received from a financial group organized by the investment banking firm of Morgan Lewis Githins & Ahn to acquire Dorchester in a transaction in which the stockholders of Dorchester will receive $22.50 cash per share of Dorchester common stock. The acquisition is to be made by one or more newly formed, privately owned corporations in which the senior management of Dorchester and partners of Morgan Lewis Githins & Ahn will have a significant equity interest.[4]

Plaintiffs' complaint alleges that the November 15 proxy statement was "highly misleading, if not an outright falsehood" because management had, as early as August 1983, investigated the possibility of a leveraged buyout with Morgan Lewis Githins & Ahn ("Morgan Lewis"),[5] and in early November of 1983 engaged that firm to arrange financing for such a transaction.

The facts submitted present the following scenario. In August, 1984, defendant John Barnes telephoned Sangwoo Ahn of Morgan Lewis to ask about doing a leveraged buy-out as a means of defending Dorchester from hostile takeover attempts.

---

**2.** The statement was made in the context of an explanation of various anti-takeover proposals submitted to Dorchester's shareholders.

**3.** Trading was 19,500 to 73,600 shares per day from November 15 to November 23, at closing prices ranging from $12.75 to $13.25 per share. On November 23, trading rose to 182,800 and the stock closed at $16.25. The American Stock Exchange was closed on November 24, 1983, Thanksgiving Day.

**4.** After this announcement, trading rose to a volume of 871,900 shares on December 5, closing at $20.38.

**5.** Morgan Lewis has provided general investment banking services for Dorchester since April of 1982.

Greiner affidavit, Exhibit 1 at 12; Exhibit 2 at 9; Exhibit 4 at 61. Dorchester's management met with Ahn to discuss a possible buy-out throughout September and October. During these discussions, some degree of management participation in the buy-out was contemplated. Greiner affidavit, Exhibit 1 at 27; Exhibit 2 at 9. In October, 1984, Morgan Lewis prepared an offering memorandum for use in soliciting financing for a buy-out, and sent it to several financial institutions. On November 2, Dorchester executed a "best efforts" letter, in which Morgan Lewis agreed to seek financing for a leveraged buy-out. By October 23, 1984, the offering memorandum had been rejected by some of the financial institutions but was still under consideration by others. On November 28, Drexel Burnham Lambert Inc. and Manufacturers' Hanover Trust Co. agreed to help finance the buy-out, and on December 2, Morgan Lewis and Dorchester signed an acquisition agreement in which it was agreed that Dorchester management would have a substantial—but still unspecified—equity interest in the buy-out.

Plaintiffs concede that the December 2 release cured whatever was misleading in the prior statements because it revealed management's approval of and significant participation in the buyout, as well as its pendency. Plaintiffs' Reply Memorandum in Support of Motion for Class Certification at 5. The issue to be decided now is whether the November 25 release adequately cured whatever was misleading in the proxy statement.[6] The issue is nearly identical to that before the court on the previous class certification motion. At that time, defendants unsuccessfully sought to restrict the class to those plaintiffs who had sold Dorchester stock between November 15 and November 23, inclusive. In that

opinion, this court stated that "on the record before the court, it cannot be said that plaintiff's contention that the press release did not effect a complete cure raises no substantial question of fact." 104 F.R.D. at 421. Defendants apparently construed the court's expression of doubts about the effect of the release as an invitation to submit this motion. The court said:

> The complaint does allege management's central role in the organization of the buy-out and the press release does not reveal this fully [footnote omitted] The significance of this omission is another question, but whatever doubts the court may have as to the plaintiff's ability to prove a 'fraud on the market' which continued after the November 25 press release, the issue is best resolved after further evidentiary development.

*Id.* at 421–22. Discovery has been completed at this time, and the evidence submitted to the court fully supports plaintiffs' allegations of management sponsorship of the buy-out.

The only evidentiary development that supports defendants' position is the fact that the extent of management participation was not determined—indeed, defendants argue that because of the way in which leveraged buyouts are structured, could not be determined—as of the November 25 release. Ahn affidavit at 2. Yet plaintiffs allege that the market was misled both as to management's sponsorship and its participation.[7] Defendants' own evidence indicates that management did sponsor the buyout attempt. The issue then turns on the materiality of the omission. Materiality is a mixed question of law and fact. *TSC Industries, Inc. v. Northway, Inc.* 426 U.S. 438, 450, 96 S.Ct. 2126, 2133, 48 L.Ed.2d 757 (1976). Summary judgment is appropriate only where "reasonable

---

**6.** F.R.Civ.P. 56(d) speaks of partial summary judgment only in terms of "facts," not of parties. Therefore, we read this motion to seek summary judgment on the issue of the curative effect of the November 25 release.

**7.** Defendants argue that plaintiffs' current emphasis on management sponsorship of the buyout attempt is an impermissible shift in position

at this stage of the litigation. Yet plaintiffs clearly alleged management sponsorship in their initial complaint, (Complaint, ¶¶ 6 and 7) in their papers for class certification, (Plaintiffs' Reply Memorandum in Support of Class Certification at 4) as well as in their papers in the instant motion (Plaintiffs' 3(g) Statement, ¶ 1).

minds cannot differ on the question of materiality." *Id., citing Johns Hopkins University v. Hutton,* 422 F.2d 1124, 1129 (4th Cir.1970). Plaintiffs have produced some evidence that the omission would be relevant to shareholders. *See* Abbe and Harrison affidavits. Defendants produce no evidence that it would not. As movants here, they bear the burden of showing that the omission was immaterial as a matter of law. *Cf. SEC v. Research Automation Corp.,* 585 F.2d 31 (2d Cir.1978). Therefore, we deny defendants' motion for summary judgment. This court has not been provided with the kind of evidence that we anticipated might justify altering our order of class certification.

 Plaintiffs' cross-motion for sanctions under F.R.Civ.P., Rule 11 is denied. Sanctions are appropriate where there is no objective basis in fact or law for making a motion. *Wells v. Oppenheimer,* 101 F.R.D. 358 (S.D.N.Y.1984) (Knapp, J.). In *Wells,* defendants moved for summary judgment in the teeth of Judge Knapp's admonition discouraging the filing of the motion. Sanctions were imposed. In this case, although there is precious little factual or legal basis for defendants' motion, we are reluctant to impose sanctions because of the court's previous expression of willingness to modify the class upon a proper evidentiary showing.

Dorchester's grossly premature motions for dismissal of the individual defendants' cross-claims and for summary judgment on its own cross-claims are denied. Although indemnity is not available to defendants guilty of intentional, reckless or knowing SEC Rule 10b–5 violations, *see Globus v. Law Research Service, Inc.,* 418 F.2d 1276 (2d Cir.1969), *cert. denied,* 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970),[8] contribution is available among defendants who have shared in defrauding a plaintiff. *Sirota v. Solitron Devices, Inc.,* 673 F.2d 566 (2d Cir.1982). Thus, contribution may well be available to the individual defendants,

and we cannot dismiss their claims at this stage of the litigation. Nor can we determine as a matter of law that Dorchester is entitled to summary judgment on its cross-claims against the individual defendants. The proxy statement at issue here was issued by Dorchester. If that statement violated federal securities laws, Dorchester may well be primarily, and not simply derivatively, liable. If so, then it is barred from seeking indemnity from the individual defendants. *See Maryville Academy v. Loeb Rhoades & Co. Inc.,* 530 F.Supp. 1061, 1071 (N.D.Ill.1981). Certainly we cannot say at this time that it *must* be entitled to indemnity from the individual defendants. Although contribution from the individual defendants may be appropriate, we cannot rule on that issue absent some findings as to liability and culpability.

All of the motions are denied.

IT IS SO ORDERED.

---

**8.** Of course, since the Supreme Court decision in *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), liability in a private damage action underr SEC Rule 10b–5 cannot be predicated upon a merely negligent misrepresentation or omission.