**Robert J. AFFELDT, Plaintiff,**

v.

**Magistrate James G. CARR, Defendant.**

**No. C85–1319.**

United States District Court,
N.D. Ohio, E.D.

April 24, 1986.

On Various Motions June 6, 1986.

Robert J. Affeldt, St. Petersburg, Fla., for plaintiff.

Robert S. Catz, Cleveland, Ohio, Terence J. Anderson, Coral Gables, Fla., Roger M. Synenberg, Asst. U.S. Atty., Cleveland, Ohio, for defendant.

## ORDER

BATTISTI, Chief Judge.

In its barest essentials, this lawsuit concerns a dispute arising from an attorney's dissatisfaction with a federal judge's ruling, which disqualified plaintiff from representing a putative class in legal proceedings based on alleged employment discrimination. Plaintiff expressed his dissatisfaction with the judge and magistrate handling his cases in the United States District Court for the Northern District of Ohio, Western Division in a wide variety of ways. First came attempts to remove the judicial officers presiding over plaintiff's cases in the form of motions for recusal. When these were denied, plaintiff resorted to harsher methods, such as the filing of lawsuits, mandamus actions, and even formal complaints under 28 U.S.C. § 372. The filing of this lawsuit permitted plaintiff to achieve his primary goal in these matters: recusal of Magistrate James G. Carr from hearing cases in which plaintiff is acting either as counsel of record or of counsel for particular parties.

In considering defendant's Motion Requesting Imposition of Sanctions, the Court finds appropriate the Magistrate's own language when he recommended to Judge Nicholas Walinski that plaintiff be disqualified from representing certain class members: "Upon consideration, I am persuaded that a direct, albeit drastic stroke is the most feasible solution to these problems." *See Sharp v. Owens Corning Fiberglas Corp.,* C80–450 (Magistrate's Report and Recommendation, Oct. 20, 1983, *reprinted in* Documentary Appendix Submitted in Support of Defendant's Motion for Imposition of Sanctions ("Deft's Doc.App.") 166–167). The imposition of sanctions in this case against plaintiff indeed constitutes a direct, drastic stroke to curb serious abuses of the judicial process by plaintiff. For the reasons stated below, defendant's Motion Requesting Imposition of Sanctions against plaintiff is hereby granted pursuant to Fed. R.Civ.P. 11 and the Court's inherent power to prevent bad-faith abuse of the judicial process. *See, e.g., Roadway Express, Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980).

\*　　\*　　\*　　\*　　\*　　\*

Rule 11 reads in pertinent part as follows:

> The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

The text of Rule 11 was amended in 1983, and some of those amendments are important in this present matter. As the Advisory Committee Note explains,

> The amended rule attempts to deal with the problem by building upon and expanding the equitable doctrine permitting the court to award expenses, including attorney's fees, to a litigant whose opponent acts in bad faith in instituting or conducting litigation.... Greater attention by the district courts to pleading and motion abuses and the imposition of sanctions when appropriate, should discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses.

Advisory Comm. Note, 97 F.R.D. 165, 198.

■ One example of the rule's change is the requisite standard of good faith. The former text made reference to willfulness as a prerequisite to disciplinary action. An inquiry into the reasonableness of the actions under the circumstances replaced this requirement. Advisory Comm. Note, 97 F.R.D. at 198 (citing *Kinee v. Abraham Lincoln Federal Savings & Loan Ass'n,* 365 F.Supp. 975 (E.D.Pa.1973)). "This standard is more stringent than the original good-faith formula and thus it is expected that a greater range of circumstances will trigger its violation." 97 F.R.D. at 199 (citing *Nemeroff v. Abelson,* 620 F.2d 339 (2d Cir.1980)). Although this requisite level of inquiry apparently is the same for *pro se* litigants, as Mr. Affeldt, the Advisory Committee notes that "the court has sufficient discretion to take account of the special circumstances that often arise in *pro se* situations." 97 F.R.D. at 199 (citing *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). The Court takes notice of the fact that plaintiff is an attorney.[1]

Upon consideration of the record before it, the Court hereby concludes that plaintiff did not make a reasonable inquiry into the factual and legal basis of his claims before initiating this lawsuit against the Magistrate, as required by Fed.R.Civ.P. 11.

A brief summary of the allegations made by plaintiff against the Magistrate sufficiently supports this holding.[2] Count I of the Complaint describes plaintiff's dissatis-

---

1. There is a split among the circuits on the issue whether an objective or subjective good faith standard is required in an analysis of Rule 11 sanctions. *Compare Gieringer v. Silverman,* 731 F.2d 1272 (7th Cir.1984), and *Wells v. Oppenheimer & Co.,* 101 F.R.D. 358. *See also* Moore's Federal Practice ¶ 11.02[2] (supp. to Vol. 2A). In taking into consideration special circumstances relevant to plaintiff in this case and in examining improper purpose, the Court here effectively considers both standards and nevertheless finds the plaintiff to have violated Rule 11. Consequently, it is unnecessary to decide at this time whether Rule 11 mandates only an objective or subjective standard of good faith.

2. A further elaboration of each count, as well as a discussion of the doctrine of judicial immunity as applied in this case, can be found in the Court's Order of November 5, 1985 which sets out the reasons for granting defendant's Motion for Dismissal. References in that Order to defendant's "Motion for Summary Judgment" should properly read "Motion for Dismissal."

faction with the Magistrate's recommendation that plaintiff be removed as class counsel and that independent counsel be sought. Such recommendations by the Magistrate, and such action ultimately adopted by the district judge, are clearly judicial acts. Moreover, Fed.R.Civ.P. 23 gives a district court ample authority to take such action to ensure that the interests of a particular class are adequately and fairly represented. Certainly a Magistrate can make a recommendation to a district judge pursuant to the Court's general authority under Rule 23. Admittedly, the action taken by Judge Walinski was unfavorable to plaintiff. Nevertheless, one versed in the simplest outline of our judiciary would surmise that a party cannot sue a judicial officer outright merely because an unfavorable decision is handed down. Any court can reasonably expect an attorney to be at least somewhat familiar with the appellate process, and to know that appeals to unfavorable decisions are not made through independent lawsuits against the judicial officer rendering such decisions.

Count II alleges a conspiracy between the Magistrate and certain law firms in the City of Toledo. As the Court noted in its November 5, 1985 opinion in this case, a judge is entitled to immunity even if he or she acts with partiality, maliciously, or corruptly. *Bradley v. Fisher,* 80 U.S. [13 Wall.] 335, 348, 20 L.Ed. 646 (1871). Our judicial system could never tolerate lawsuits against judicial officers who issue unfavorable opinions and then who are accused of improper or illegal behavior.

Plaintiff went beyond the typical remedy in such a situation, a motion for recusal, even though such additional steps were unwarranted, improper, and unreasonable.

Count III has no reasonable basis in law in that plaintiff seeks to deny a district court its power to declare certain individuals unacceptable representatives of certain classes of litigants. *See* Fed.R.Civ.P. 23(a)(4). It would indeed be difficult to draft this particular civil rule, which vests courts with the type of power exercised by Judge Walinski, any more clearly.

■ Counts IV, V, VI, and VII deal with the alleged denial of a hearing before the Magistrate made his recommendation to Judge Walinski, yet the Court finds ample evidence to the contrary in the record. The Magistrate's own Report and Recommendation of October 20, 1983 (recommending, *inter alia,* the disqualification of Mr. Affeldt), states that a pretrial conference was held on the matter, and that a hearing was held on September 19 and 20, 1983. Deft's Doc.App. 165–166. In addition to these oral representations to the Magistrate, counsel, including Mr. Affeldt, had sufficient opportunity to submit written pleadings to the Magistrate. In light of this record, plaintiff's allegations cannot be viewed as being well-grounded in fact and law, as Rule 11 requires.[3]

Even if one moves beyond an objective standard for determining the reasonableness of plaintiff's action in filing this lawsuit, no special circumstances have been presented in this particular case which lead the Court to modify its holding. Indeed

---

**3.** Plaintiff filed a Motion for Leave to Amend Complaint on March 19, 1986. While the Court does not deny that at times a plaintiff is permitted to amend the complaint even after a motion for dismissal has been granted, the preferable procedure is to move the court to reopen its judgment. 3 Moore's Federal Practice ¶ 15.10. This procedure would appear to be most appropriate in a case as the instant one, since the Court entered a final judgment in this case in the form of a rather lengthy opinion. It was clear from that opinion that all matters were conclusively adjudicated at that time. Neither the defendant nor the Court should have to wait four months for another attempt by plaintiff to reopen this matter, especially in light of the fact

that plaintiff's Motion for Reconsideration was denied on January 7, 1986.

More important to the resolution of this pending motion is the fact that plaintiff fails to cure any of the defects of the original Complaint through the amendments. Plaintiff does not successfully answer the Court's analysis on the law of judicial immunity, for example, by merely condensing separate counts into longer paragraphs. Even as amended, the Court would be required to dismiss this suit for many of the same reasons, if not the identical reasons, enunciated in its November 5, 1985 opinion.

Accordingly, plaintiff's Motion for Leave to Amend Complaint is hereby denied.

certain special circumstances in this case strongly suggest that plaintiff acted out of a subjective bad faith in filing this lawsuit against the Magistrate.

At the heart of plaintiff's complaint lies his dissatisfaction with the Magistrate's recommendation and Judge Walinski's order removing plaintiff as class representative. Our judicial system does not permit, nor can it tolerate, a procedure whereby a particular decision is reversed by suing the individual who initially recommended such a decision. A *pro se* litigant untrained in the law may not immediately think of this systemic limitation, but a licensed attorney should. To put it quite simply, plaintiff, as an attorney, should have known better.

Plaintiff's bad faith also manifests itself in the blunderbuss approach in which he attempted to reach, and ultimately did achieve, his objective of having the Magistrate recuse himself. Although plaintiff argued at the hearing on sanctions, held on January 29, 1986, and elsewhere that there were no other remedies available other than the filing of a lawsuit against the Magistrate,[4] he did file three days after initiating this lawsuit a mandamus action

and a complaint under 28 U.S.C. § 372 with the Sixth Circuit Court of Appeals against the Magistrate.[5] Prior to these filings, plaintiff had moved for the recusal of Judge Walinski (denied November 23, 1982 in *Sharp v. Owens Corning Fiberglas Corp.*, C80–450), and of the Magistrate (denied November 28, 1983 in *Prude v. Toledo Trust Corp.*, C82–170).[6]

\* \* \* \* \* \*

By failing to make a reasonable inquiry into the factual and legal background of his lawsuit against the Magistrate, plaintiff violated Rule 11. For this reason, the Court accordingly grants defendant's request for the imposition of sanctions in this case. This particular example of procedural abuse, however, presents a more troublesome factual situation than merely a failure on the part of a party to make a reasonable inquiry into the facts and law of a case before filing.

By signing a pleading, motion, or other paper, an attorney or party certifies that, in addition to having undertaken a reasonable inquiry, the pleading, motion, or other paper is "not interposed for any improper purpose, such as to harass or to cause

**4.** *See, e.g.,* Transcript to January 29, 1986 Hearing (the "Transcript") 32, 39.

**5.** These actions were dismissed because, according to defendant's filings in this case, the Sixth Circuit viewed these filings as an effort to bypass conventional appellate remedies. *See* Deft's Supplemental Post-Hearing Brief 2.

**6.** These two recusal motions are apparently only the proverbial tip of the iceberg. According to an affidavit filed by counsel in *Prude v. Toledo Trust Company*, C82–170, a case assigned to Judge Walinski, plaintiff filed no fewer than 50 motions for recusal against judicial officers in the Northern District of Ohio. *See* Deft's Doc. App. 284–286. Nine of those motions were against the Magistrate, the most recent of which were filed less than a week after plaintiff initiated this lawsuit. This large number of recusal motions alone reflects bad faith on the part of the plaintiff, and is difficult to square with plaintiff's statement during the recent hearing that "[h]e certainly has the highest regard for the judicial process and is not an outlaw whatsoever in that respect." Transcript 21.

The Court is also disturbed by plaintiff's suggestions during the recent hearing that he was

taking a very active role in the cases from which he sought the removal of the Magistrate (and presumably Judge Walinski), and that his denial of status as class counsel effectively ended his Title VII practice at least in Toledo. *See* Transcript 19, 22, 24, 26, 44. Defendant has brought to the Court's attention letters between plaintiff and his clients which indicate plaintiff's intention to withdraw from the cases in question, or at least to reduce significantly his role in those cases, far before this case was brought. The reasons for withdrawal appear to be both personal and professional in nature but unrelated to this case. Deft's Supp. Post-Hearing Brief 3–5. On January 9, 1984, plaintiff moved to withdraw as counsel in certain cases before the Magistrate. Plaintiff stated in his motion to withdraw that "it would be in the best interest of his clients that they obtain new counsel" because of plaintiff's "new and time-consuming projects outside the City of Toledo." Pltf's Reply to Post-Hearing Brief, Ex. B. Although plaintiff now contends that "there was no intention to withdraw until the sweeping prior restraint order was issued by the Magistrate on October 20, 1983, which gave the plaintiff no choice but to withdraw," *id.* 4, no mention was made of this order in plaintiff's motion to withdraw.

unnecessary delay or needless increase in the cost of litigation."

This implies an element of subjective bad faith. Although purpose to harass might sometimes be inferred from the totally baseless nature of a claim, under the revised rule this could hardly be so unless the signing attorney or party had also misrepresented the factual and legal sufficiency of the claim. Therefore to fall within the 'improper purpose' language it will usually be necessary to demonstrate some subjective bad faith.

2A Moore's Federal Practice ¶ 11.02[2] n. 7 (1985).

Upon consideration of the record before it, the Court concludes that plaintiff filed the instant action against the Magistrate for certain improper purposes including: to interfere with the resolution of certain cases then being handled by the Magistrate and Judge Walinski; and to obtain the Magistrate's recusal, something which plaintiff was denied through normal procedures such as a motion for recusal.

In his order of July 31, 1985 in *Prude v. Toledo Trust Co.*, C82–170, the Magistrate indicated that his recusal of May 3, 1985 (three days after the instant action was filed) was necessary solely because of plaintiff's conduct against him, as reflected in this lawsuit and the mandamus and § 137 actions. "It is unquestionably unfortunate that as a result of their misconduct, Mr. Affeldt and his colleagues accomplish a result to which they are not otherwise entitled." *Id.* at Deft's Doc.App. 270. This ill-founded lawsuit virtually assured the Magistrate's recusal.[7]

No court can tolerate such conduct on the part of the members of its bar, unless it is willing to tolerate significant delays in litigation, prejudice to parties, and unnecessary burdens on its time. All of these things have resulted from plaintiff's initiating this frivolous lawsuit. The recusal of the Magistrate through the filing of this instant action as well as filings against Judge Walinski's participation in cases in which plaintiff was either counsel of record or of counsel have shifted many of these matters to Judge Potter's docket. Transcript 10; Deft's Motion Requesting Imposition of Sanctions 28. This shift has precipitated its own obvious delays. Furthermore, there is evidence indicating that the Magistrate's recusal from at least one case, *Prude v. Toledo Trust Company*, C82–170, has prejudiced the parties. *See* Affidavit of Rolf H. Scheidel, Deft's Doc.App. 273. This is the unfortunate but inevitable result when a judicial officer, who has been involved in complex litigation for years, is suddenly removed from a case and prohibited from further participation.

Related to the Court's powers to impose sanctions under Rule 11's provision concerning improper purpose is the Court's inherent power to prevent bad-faith abuse of the judicial process. The United States rule of requiring each party to pay its own attorney's fees, *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), nevertheless permits a court to assess fees against a party for willful disobedience of a court order, or when the losing party has acted in bad faith. As the Supreme Court recently stated in *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980):

> The power of a court over members of its bar is at least as great as its authority over litigants. If a court may tax counsel fees against a party who has litigated in bad faith, it certainly may assess those expenses against counsel who willfully abuse judicial processes.

*Id.* at 766, 100 S.Ct. at 2464.

■ The discussion above amply supports a finding of bad faith in the filing of

---

7. In his order of July 31, 1985, the Magistrate examined the law applicable to recusal. He concluded, "Most simply put, the unusual spectacle of an attorney having sued the presiding officer and sought to deprive him of his tenure might cast an indelible shadow across the ability of a reasonable person to have full confidence in such judge's impartiality." Deft's Doc. App. 268–269. In short, the Magistrate felt compelled to recuse himself after the plaintiff initiated this lawsuit, and this Court agrees with the Magistrate's interpretation of the law on this point.

this lawsuit by plaintiff. He abused the judicial process to obtain an end to which he was not entitled. In conducting himself in this manner, plaintiff disturbed the judicial process of this district. And because plaintiff is both a party and an attorney, the Court exercises its supervisory powers over both litigants and the practicing bar when dealing with plaintiff's bad-faith filing in this particular case. The sanction is a severe one, commensurate with the severe abuse which has taken place in this case.

\*      \*      \*      \*      \*      \*

In light of the findings in this case and pursuant to the Court's inherent powers and its explicit powers under Rule 11, plaintiff is hereby ordered to pay reasonable expenses incurred by defendant as a result of this lawsuit, including a reasonable attorney's fee. Defendant noted in his Motion Requesting Imposition of Sanctions that he would submit a final statement of fees and costs for the Court's approval should his motion be granted. If defendant's counsel chooses to supplement his affidavit of February 12, 1986, he shall do so by filing a brief final statement of fees and costs within fifteen (15) days of the issuance of this Order. If defendant files such a brief final statement, plaintiff shall have fifteen (15) days after service of defendant's statement to respond and comment briefly. An order, which specifies the dollar amount to be paid to defendant by plaintiff, shall issue after appropriate consideration of such final statements by the Court.

Defendant's counsel has pointed out that the Magistrate's costs incurred in this proceeding would ordinarily be paid by the United States under 28 U.S.C. § 463. As a practical matter, then, the Magistrate would likely have incurred no personal expenses in defending himself in this case even if the Court had decided not to impose sanctions against plaintiff. Defendant is instructed to keep this fact in mind when calculating reasonable expenses and fees incurred in this litigation as well as reasonable attorney's fees. The imposition of

sanctions in this case, through the exercise of the Court's inherent powers and its explicit powers under Rule 11, may be a direct and drastic stroke, but it must not be an unreasonable one. *See* Fed.R.Civ.P. 11.

\*      \*      \*      \*      \*      \*

Plaintiff has made his own request for separate sanctions against defendant for defendant's filing of his Motion Requesting Imposition of Sanctions. Plaintiff's Motion for Sanctions is hereby denied, as the Court finds defendant's motion to be well-taken for the reasons stated above.

IT IS SO ORDERED.

### ON VARIOUS MOTIONS

On April 24, 1986, the Court granted the Magistrate's Motion Requesting Imposition of Sanctions against plaintiff pursuant to the Court's inherent powers and its explicit powers under Fed.R.Civ.P. 11. Under that order, plaintiff is required to pay reasonable expenses incurred by the Magistrate as a result of this lawsuit, including a reasonable attorney's fee. Defendant's counsel indicated in an earlier pleading the possibility of his filing a final statement of fees and costs after the Court granted his motion. Defendant was given fifteen days after the granting of his motion to do so. Further, the order provided that "[i]f the Magistrate files such a brief final statement, plaintiff shall have fifteen (15) days after service of the Magistrate's statement to respond and comment briefly." Order, April 24, 1986, at 10.

The Magistrate chose not to file a final statement of costs, but instead responded to the Court's order of April 24, 1986 with a brief narrative on 28 U.S.C. § 463. That particular filing did not specifically mention costs or expenses; however, the Court does have an affidavit of the Magistrate's counsel, filed on February 12, 1986, which outlines in significant detail the hours and costs involved in this case.

Plaintiff responded to the Court's order of April 24, 1986 with three filings: a Motion for an Extension of Time, or, in the Alternative, a Motion to Accept Previously

Submitted Affidavit as Response in Opposition to Defendant's Attorney Fee Petition; a Motion to Alter or Amend the Court's Order of April 24, 1986; and a Motion for Relief Pursuant to Rule 60(b)(1) and 60(b)(6).

Because the Magistrate's counsel has submitted no additional statement of fees and costs in this matter but instead makes reference to an earlier affidavit, there appears to be no reason for an additional response from plaintiff. Plaintiff has moved the Court to consider his affidavit, filed on March 7, 1986, which responds to the affidavit of the Magistrate's counsel. The Court hereby grants plaintiff's Motion to Accept Previously Submitted Affidavit as Response in Opposition to Defendant's Attorney Fee Petition.

As to the plaintiff's Motion to Alter or Amend the Court's most recent order and plaintiff's Motion for Relief Pursuant to Rule 60(b)(1) and 60(b)(6), the Court refers the plaintiff to its order of January 7, 1986, in which it denied plaintiff's motion for reconsideration of the Court's original dismissal of his case against the Magistrate. As in that matter, the plaintiff has again failed to persuade the Court of the propriety of reconsideration. Plaintiff's instant motions do little more than reargue what the Court earlier rejected in its opinion of November 5, 1985 and subsequent order denying reconsideration. Many of the claims which plaintiff raises in the instant motions were fully considered in some of the original pleadings in this case, and others were dealt with in the hearing on sanctions held on January 29, 1986. In short, the Court finds that no mistake, inadvertence, surprise, or excusable neglect exists, nor is there some type of meritorious defense or claim that would be presented if the case were ultimately reconsidered. *See* Order, Jan. 7, 1986, at 2 and citations therein. Accordingly, plaintiff's Motion to Alter or Amend the Court's Order of April 24, 1986 and his Motion for Relief Pursuant to Rules 60(b)(1) and 60(b)(6) are hereby denied.

The final matter to be decided in this case is the specific dollar amount for the sanctions. The affidavit of the Magistrate's counsel lists a total of 129.4 hours spent on this case.[1] The Magistrate's counsel has indicated that his fee for representation is ordinarily $110 per hour for out-of-court work, $125 per hour for in-court work. The Court finds these fees reasonable given the nature of representation involved. Accordingly, sanctions consisting of attorney's fees shall be $14,249.[2] Plaintiff shall also pay the reasonable expenses which defendant's counsel outlined in his affidavit, which total $43.05.[3]

The Court rejects plaintiff's objections to Mr. Catz' affidavit. It is difficult to believe that discussions with one's client, whether by telephone or in person, could be considered "completely unnecessary." Affidavit of Robert J. Affeldt 4. It is also difficult to believe that anyone would consider 20 hours as a sufficient time for representing the Magistrate in a proceeding whose record is as voluminous as in the instant case. Undoubtedly, defendant's legal bill would have been smaller if plaintiff had shown more restraint in his pleading practice. But motions filed by plaintiff, regard-

---

**1.** By the Court's own calculation of the specific items of time spent, the total is slightly more than 129.4. Because the affidavit is the only specific breakdown of fees and costs of the Magistrate's representation before the Court, however, the Court is forced to rely heavily upon this document and will follow the Magistrate's own calculations. The Court is also aware of the fact that this affidavit may actually underestimate the expense of representation in a number of ways. For example, not all specific costs, such as telephone conferences, are listed, and some items do not list the time spent (e.g., nos. 65, 66). Moreover, the Magistrate's counsel has listed no expenses for representation after February 6, 1986, although Mr. Catz continues to represent the Magistrate to the present day. Nevertheless, the Court believes that the sanctions specifically ordered today are reasonable under its inherent powers and the specific powers granted to it under Rule 11.

**2.** 128.4 hours × $110 = $14,124 (out-of-court) + $125 (in-court) = $14,249.

**3.** $33.05 (telephone) + $10.00 (postage) = $43.05.

less of their merit, often require responses filed by defendant, and such responses require both time and money.

Finding that the fees and costs submitted by the Magistrate's counsel are reasonable, plaintiff is hereby ordered to pay defendant $14,249 in legal fees and $43.05 in costs as sanctions in this case.

IT IS SO ORDERED.