**FUJI PHOTO FILM U.S.A., INC., Plaintiff,**

v.

**AERO MAYFLOWER TRANSIT CO., INC., and Greyhound Lines, Inc., Defendants.**

**No. 85 Civ. 4669 (RLC).**

United States District Court, S.D. New York.

Oct. 7, 1986.

Tell, Cheser & Breitbart, New York City, for plaintiff, Kenneth Feit, of counsel.

Kelley Drye & Warren, New York City, for defendant Greyhound Lines, Inc.; Robert Ehrenbard, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Greyhound Lines, Inc. ("Greyhound Lines") moves for sanctions against Fuji Photo Film U.S.A., Inc. ("Fuji") pursuant to Rule 11, F.R.Civ.P.[1] This motion follows the court's order of May 2, 1986,

granting summary judgment to Greyhound Lines.[2] The court found that Fuji, plaintiff in that action, had failed to establish any basis for liability on the part of Greyhound Lines. Greyhound Lines now alleges that the complaint and the amended complaint fell short of the standards mandated by Rule 11.

## BACKGROUND

This case arose out of damage allegedly done to a Fuji printer-processor when it was loaded onto a moving van by employees of Greyhound Exposition Services, Inc. ("Greyhound Exposition"), a non-party to this action.[3] The parties agreed that Greyhound Lines had no direct participation in the delivery. McLoughlin Affidavit in Opposition to Motion to Dismiss at ¶ 12; Dean Declaration in Support of Motion to Dismiss at ¶ 10. Instead, Fuji's case rested on proving Greyhound Lines' responsibility for Greyhound Exposition's act.

The original complaint in this action was brought in the Civil Court of the City of New York on May 16, 1985. The document itself tells the whole story of this case: The typed caption initially named Greyhound Exposition as a defendant, but "Exposition" had been crossed out, and "Lines, Inc." had been inserted in its stead by hand. *See* Exhibit 2 to Dean Declaration in Support of Motion for Sanctions. Before the action was removed to this court on June 14, 1985, Greyhound Lines made sure by phone and letter that plaintiff intended to sue it, and not Greyhound Exposition. *See* Exhibit 3 to Dean Declaration in Support of Motion for Sanctions. On July 5, 1985, Greyhound Lines moved to dismiss the complaint or, alternatively, for a more definite statement of plaintiff's allegation.

---

1. Rule 11 provides in pertinent part as follows: The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnec-

essary delay or needless increase in the cost of litigation. Rule 11, F.R.Civ.P.

2. *Fuji Photo Film U.S.A., Inc. v. Aero Mayflower Transit Co.,* 85 Civ. 4669 (S.D.N.Y. May 2, 1986) [Available on WESTLAW, DCTU database].

3. For a more complete discussion of the facts of this case, see the court's summary judgment order. *Fuji Photo Film U.S.A., Inc. v. Aero Mayflower Transit Co., supra.*

In support of these motions, defendant submitted affidavits swearing that Greyhound Lines and Greyhound Exposition were separate corporations, incorporated and with principal places of business in different states. In addition, defendant swore that Greyhound Lines exercised no control over Greyhound Exposition. *See* Campbell Affidavit in Support of Motion to Dismiss at ¶ 16; Campbell Reply Affidavit at ¶ 10. As Dan Campbell, a senior attorney at Greyhound Lines stated:

> [B]oth corporations, which are subsidiaries of Greyhound Corporation, are involved in separate businesses: GREYHOUND LINES, INC., in passenger and package transportation, Greyhound Exposition Services, Inc., in a variety of services facilitating the holding of conventions, displays, and trade shows. No executive officer of either company "reports to" any of the other, no merging of accounts exists....

Campbell Reply Affidavit at ¶ 10. Plaintiff, however, found evidence of Greyhound Lines' responsibility in the absence of any reference to Greyhound Exposition's incorporation in its letterhead, and the fact that Greyhound Exposition and Greyhound Lines shared the Greyhound logo. *See* Feit Affidavit in Opposition to Motion to Dismiss Complaint at ¶¶ 5, 7.

On August 20, 1985, the court granted Greyhound Lines' motion for a more definite statement, but denied the motion to dismiss, giving Fuji an opportunity to make its case in greater detail. Fuji's amended complaint, however, merely reasserted that the printer-processor was damaged by "Greyhound Exposition Services, Greyhound Lines, Inc., or one of its affiliated companies, divisions, or subsidiaries." *See* Exhibit 5 to Dean Declaration in Support of Motion for Sanctions.

On September 18, 1985, Greyhound Lines again moved to dismiss. After filing the motion, Thomas R. Dean, counsel for the defendant, called plaintiff's counsel, Kenneth Feit, demanding that defendant be dropped from the suit. This call was followed by a letter. *See* Exhibit 6 to Dean Declaration in Support of Motion for Sanctions. In his motion opposing the motion to dismiss, Mr. Feit offered no further grounds for liability on the part of defendant and counsel's supporting affidavit merely referred the court back to the conclusory language of the complaint. *See* Feit Affidavit in Opposition to Motion to Dismiss at ¶¶ 5, 6, attached as Exhibit 12 to Dean Declaration in Support of Motion for Sanctions.

On May 2, 1986, Greyhound Lines' motion for summary judgment was granted. The court found that no issue of material fact existed as to either Greyhound Exposition's corporate status or its independence from Greyhound Lines. *Fuji Film U.S.A., Inc. v. Aero Mayflower Transit Co., supra,* slip op. at 8–10.

## DISCUSSION

The principal purpose of the 1983 amendment to Rule 11 was to deter spurious claims. Rule 11, F.R.Civ.P., advisory committee note. Under the new rule, "subjective good faith no longer provides the safe harbor it once did." *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 253 (2d Cir.1985). Instead, an objective standard governs the attorney's "affirmative duty ... to conduct a reasonable inquiry with respect to the facts and the law of every paper filed in court." *Kramer, Levin, Nessen, Kamin & Frankel v. Aronoff,* 638 F.Supp. 714, 726 (S.D.N.Y.1986) (Carter, J.) (citation omitted).

In the instant action, defendant asserts that both the original and the amended complaint do not meet the standards established by the new rule. The court believes that defendant paints with too broad a brush.

■ Turning first to the original complaint, it is worth remembering that a policy of liberal pleading governs litigation in federal court. A complaint need not plead evidence. Rule 11 requires that an attorney make a prefiling inquiry to establish reasonable grounds to believe that further investigation and discovery will prove his case. *See Monarch Insurance Co. v. In-*

*surance Corp. of Ireland, Ltd.*, 110 F.R.D. 590, 594–95 (S.D.N.Y.1986) (Carter, J.). Sanctions are only warranted where it is *"patently clear* that a claim has absolutely no chance of success under existing precedents," *id.* at 593 (quoting *Eastway Construction Corp., supra* 762 F.2d at 254) (emphasis in original), or when a plaintiff persists with a claim after it has become patently clear that it has no basis in fact or law. Even if commencing the action does not violate the rule, maintaining the action may give rise to sanctions. *Monarch Insurance Co. of Ohio v. Insurance Corp. of Ireland, Ltd., supra*, 110 F.R.D. at 594–95; *Burlington Coat Factory Warehouse v. Belk Brothers Co.*, 621 F.Supp. 224, 239 (S.D.N.Y.1985) (Sand, J.).

■ At the time plaintiff commenced this action, it was not unreasonable to assume that further investigation and discovery would sustain its claim. At that point, plaintiff was in possession of the letter from Greyhound Exposition that suspiciously made no mention of its incorporation. In addition, the logo shared by Greyhound Exposition and Greyhound Lines suggested the possibility of a corporate relationship that would sustain liability on the part of Greyhound Lines.

■ The amended complaint, however, presents a different picture. By the time plaintiff's counsel filed his amended complaint, defendant, in motion and affidavit, had questioned the basis of plaintiff's claim to the extent that a prudent attorney would have been prodded to action. Defendant had " 'laid all his cards on the table.' " *Burlington Coat Factory Warehouse v. Belk Brothers Co., supra*, 621 F.Supp. at 239. The Campbell reply affidavit, in particular,[4] contained sufficiently detailed information as to Greyhound Exposition's corporate status and independence from Greyhound Lines to dispel any inferences that had been drawn from the shared logo and the letterhead.

Notwithstanding those disclosures, the claims in the amended complaint remained grounded on the logo and the letterhead.[5] Moreover, in the three months that had elapsed between the filing of the original complaint and the amended complaint, plaintiff's counsel had undertaken no discovery, nor is there evidence that he pursued any independent inquiries. Indeed, in the year between the filing of the original complaint and the grant of summary judgment for defendant, the only demonstrable step that plaintiff took to prove its case against Greyhound Lines was to notice the defendant's deposition. *See* Exhibit 8 to

---

4. Kenneth Feit, counsel for plaintiff, apparently has forgotten or overlooked the information provided in Mr. Campbell's Reply Affidavit. In his Affidavit in Opposition to Sanctions, Mr. Feit swears that at the time he filed his amended complaint, he was convinced that omissions in Mr. Campbell's original affidavit "cried out for clarification":

For example, there was no mention whatsoever as to whether or not the two companies had separate management and financial structures. The affidavit was silent as to whether or not the two corporations had common facilities and employees or whether the finances and operations of the two companies were integrated in any way. My reading of the Campbell affidavit led me to conclude that had the answers to these questions been favorable to Greyhound's position, they would have been brought to the Court's attention and that Greyhound's silence in this regard might mean that the answer to these questions would be favorable to plaintiff's position.

Feit Affidavit in Opposition to Sanctions at ¶ 14. The information Mr. Feit said he was lacking is precisely the information Mr. Campbell provided in his Reply Affidavit, quoted in the text above.

5. Feit Affidavit in Opposition to Sanctions at ¶ 6. Plaintiff also argues that he believed his amended complaint sufficient because the very same allegations had already withstood a motion to dismiss. *Id.* at ¶ 16. This requires little discussion. It is true that a favorable or encouraging indication from the court early in the litigation makes the court reluctant subsequently to impose sanctions. *See Friedlander v. Barnes*, 622 F.Supp. 630, 633 (S.D.N.Y.1985) (Carter, J.). In the case at bar, however, the denial of defendant's original motion to dismiss was coupled with the court's order granting defendant's motion for a more definite statement. Requiring plaintiff to replead his case can hardly be seen as an encouraging sign.

Feit Affidavit in Opposition to Motion for Sanctions.

Plaintiff's failure to investigate its claim is particularly troubling in light of the ease with which its theory could have been tested. To determine Greyhound Exposition's corporate status, plaintiff only had to check with the Arizona Secretary of State (where plaintiff knew the company was located) to see whether Greyhound Exposition was listed as a corporation. The relationship between the two corporations could have been checked just as easily by even a cursory look through the 1984 Annual Report of the Greyhound Corporation. In that document, Greyhound Lines and Greyhound Exposition are clearly listed separately. *See GREYHOUND CORP., 1984 ANNUAL REPORT* 16, 23 (1984), attached as Exhibit 2 to Feit Affidavit in Opposition to Defendant's Motion to Dismiss. Indeed, in a section denominating the parent corporation's "key operations," the two subsidiaries are listed under entirely different corporate divisions: Greyhound Exposition is listed under the "Services/Food Service" group, whereas Greyhound Lines falls under "Transportation Services." *Id.* at 16. Plaintiff's counsel himself demonstrated the ease with which the Annual Report could have been obtained when he attached the report to an affidavit in support of a jurisdictional point he wished to make. *See* Exhibit 2 to Feit Affidavit in Opposition to Defendant's Motion to Dismiss. As Mr. Feit reported, the document was secured without difficulty "from the Public Conference Room of the Securities and Exchange Commission at 26 Federal Plaza, New York, New York...." Feit Affidavit in Opposition to Motion to Dismiss at ¶ 10.

Mr. Feit's blind obstinacy in the face of overwhelming evidence that he was pursuing the wrong defendant is precisely the type of conduct that Rule 11 is designed to deter. *Monarch Insurance Co. of Ohio v. Insurance Corp. of Ireland, supra,* 110 F.R.D. 590; *Burlington Coat Factory Warehouse v. Belk Brothers Co., supra,* 621 F.Supp. 224.

The court does not grant sanctions casually. On the facts of this case, however, defendant's motion is persuasive. A reasonable attorney simply would not have filed plaintiff's amended complaint. Accordingly, Greyhound Lines is to submit to the court in due course a sworn, itemized statement with supporting data regarding attorneys' fees it incurred in defending this case. Plaintiff may file papers in opposition.

IT IS SO ORDERED.