**Seymour HAYDEN, Plaintiff,**

v.

**MUTUAL OF OMAHA INSURANCE COMPANY, Defendant.**

**No. 85 Civ. 2584 (RLC).**

United States District Court, S.D. New York.

Aug. 16, 1988.

Weg and Myers, P.C., New York City, for plaintiff; David Karel, of counsel.

Kelley Drye & Warren, New York City, for defendant; Jeffrey S. Cook, Kimberly Unger, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Rule 11, F.R.Civ.P., has spawned a plethora of satellite litigation. Too often now a successful defendant is not satisfied with having succeeded in the main litigation but seeks sanctions against the plaintiff and plaintiff's counsel as well. There are many instances in which sanctions are appropriate, and I have made my share of such awards. *See, e.g., Fuji Photo Film U.S.A., Inc. v. Aero Mayflower Transit Co.*, 112 F.R.D. 664, 666 (S.D.N.Y.1986); *Kramer, Levin, Nessen, Kamin & Frankel v. Aronoff*, 638 F.Supp. 714, 725 (S.D.N.Y.1986); *Montauk Oil Transp. Corp. v. Sonat Marine, Inc.*, 4 Fed.R.Serv.3d 897 (S.D.N.Y.

1986) [available on WESTLAW, 1986 WL 1805].

*Eastway Construction Corp. v. City of New York*, 762 F.2d 243 (2d Cir.1985), the seminal authority in this Circuit on Rule 11, provides probably the most lucid interpretation of the scope and meaning of the revised rule. There the Court said:

> No longer is it enough for an attorney to claim that he acted in good faith, or that he personally was unaware of the groundless nature of an argument or claim. For the language of the new Rule 11 explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed. . . . [S]anctions shall be imposed against an attorney and/or his client when it appears that a pleading has been interposed for any improper purpose, *or where*, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law. *Id.* at 253–254.

While I had little difficulty finding that fraud had not been established and ordered the case dismissed, it strikes me that defendant's Rule 11 motion amounts to overkill and should be denied.

A brief recapitulation of the facts may be instructive. Plaintiff purchased a $100,000 air trip insurance policy for his mother, a ninety-year-old woman, who took a trip to Florida in March, 1984. On the return flight to New York, Mrs. Hayden stopped breathing apparently when some food lodged in her throat shortly before the plane set down at LaGuardia Airport. Efforts to resuscitate her failed, and she was taken by ambulance to a hospital in Elmhurst where she was pronounced dead. The death certificate issued by physicians at the hospital attributed her death to natural causes.

Plaintiff, after his mother's death, made contact with defendant's then assistant service manager of claims, Willard Whitney. Whitney told Hayden that there had been

no autopsy, that the death certificate listed natural causes for the woman's death, and that the company did not feel it should pay the entire liability. Over these facts there is no dispute. Hayden states that a settlement of $80,000 was agreed to. Whitney says Hayden suggested $80,000, and that he had no authority to agree to any sum. Subsequently, a claims agent, Rudolph Fabrizio, visited Hayden at LaGuardia where he worked. Fabrizio came prepared to offer Hayden an immediate sum of money in settlement. He also stressed the difficulty of establishing that the death was due to accidental causes, given the death certificate notation of natural causes and the woman's age, and he pointed out that if Hayden did not settle he might have to hire lawyers to take the matter to court where he could end up with nothing. Fabrizio first offered $50,000. They settled for $63,000. He wrote out a check to Hayden for $31,500. Plaintiff agreed to the settlement, cashed the check, took steps necessary to secure the second $31,500 check, and received and cashed it. After doing all this either on his own or more probably at some third party's suggestion, Hayden felt he had been badly treated, hired a lawyer and initiated this action.

Plaintiff is a man of limited education and, based on observations of his courtroom behavior, easily confused. He was not very articulate when he testified before me.

While I am confident that there was no fraud, Fabrizio's conduct was not without blemish. He let Hayden know that he was prepared to give him that day a substantial sum of money, with the threat that if Hayden did not come to terms, he might end up with nothing. Hayden was offered the opportunity to think the matter through, but the inducement to accept the check for $31,500 that day was too much—as I am sure Fabrizio realized and intended that it would be.

Although no such testimony was given at the trial, apparently Hayden advised his attorneys that Fabrizio or Whitney had told him that defendant had a policy of not paying death claims of ninety-year-olds and had raised questions concerning the validity of the policy, which had been bought with a credit card. Nothing as direct as a disclaimer of the company's liability for death claims of ninety-year-olds or a statement that an insurance policy bought by credit card was invalid was probably said, but it is certainly reasonable to believe that both Whitney and Fabrizio dwelt on the woman's age as one of the reasons that the company might avoid liability.

The defendant used marketplace tactics to save itself $37,000 in liability. Had Hayden been more intelligent and less overwhelmed with receiving $31,500, he would have turned down Fabrizio's offer, and, with or without third party advice, had a good chance of receiving the full amount of the policy.

I think he had every right to seek legal advice, albeit he did so too late. While his lawyer should have known that the standards for proving fraud were too high and that the suit would have been better grounded on a theory requiring a preponderance standard, he had his client's word against defendant's employees' word. If Hayden had testified that he was told that defendant had a policy not to pay death claims of ninety-year-olds and would not validate policies bought with credit cards, the case would have gone to the jury to determine whether there had in fact been fraud. Plaintiff made no such representations on the witness stand. Thus, there was no semblance of a fraud claim. I am cognizant of the fact, however, that much of what went on while Hayden was on the stand was not clearly understood by him. Hayden, therefore, may not have articulated on the stand what he told his lawyers because he was nervous or frightened and confused.

In any event, although at fault in capitulating so readily, Hayden not surprisingly began to feel he had been wronged. He did not get the full value of what he bought. His lawyers could make no further inquiry than what had been told to them by Hayden. As indicated, if Hayden had articulated what he evidently told the lawyers, the jury might very well have

found in Hayden's favor. Under the circumstances, I do not believe an award of sanctions is warranted against either the plaintiff or his counsel.

The motion for sanctions is denied.

IT IS SO ORDERED.